MAYOR AND BOARD OF ALDERMEN OF THE TOWN OF VIDALIA *v.* McNEELY, ADMINISTRATRIX.

McNEELY, ADMINISTRATRIX, *v.* MAYOR AND BOARD OF ALDERMEN OF THE TOWN OF VIDALIA.

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA.

Nos. 140, 163. Argued January 26, 27, 1926.—Decided June 6, 1927.

1. Ferries operated across boundary waters between States simply as a means of transit from shore to shore are instruments of local convenience and subject to local regulation to the extent that, in the absence of Congressional action, each State may act with respect to the ferriage from its shore. P. 681.
2. But a State or its municipality may not make its license a condition precedent to the operation of such a ferry by one having full capacity to operate, and operating it serviceably. P. 683.
3. Landing places for competing ferries in a town may be designated in an equity suit, where the town has unlawfully refused to consider one of the ferries, upon the ground that it was not licensed, and assigned the place which it occupied to the competitor. P. 683.
4. In Louisiana, the banks of navigable streams are subject to a servitude permitting their use for public purposes, including those incident to navigation. The owner of riparian lots is not entitled to preference in the use of the adjacent bank for ferry landings; nor does prior use entitle him to exclude another ferry where there is room for both. P. 684.

6 F. (2d) 19; *id.* 21, affirmed.

CROSS appeals from a decree of the District Court in a suit to restrain the Town of Vidalia, Louisiana, from interfering with the operation of a ferry.

*Messrs. Hugh Tullis* and *L. T. Kennedy,* with whom *Messrs. E. H. Ratcliff* and *W. H. Watkins* were on the briefs, for McNeely, Administratrix.

*Mr. G. P. Bullis* for the Town of Vidalia.

*Messrs. John Brunini, James H. Price,* and *Luther A. Whittington* filed a brief as *amici curiae,* by special leave of Court.

Mr. Justice Van Devanter delivered the opinion of the Court.

This is a suit to restrain the town of Vidalia, Louisiana, from unwarrantably interfering with the operation by the complainant of a public ferry from that town across the Mississippi River to Natchez, Mississippi. On a preliminary hearing the District Court awarded the complainant a temporary injunction, 6 Fed. (2d) 19. In the answer the defendant insisted that the complainant was without a license from it to operate the ferry and on that ground prayed that he be enjoined from continuing his operation. On the final hearing the temporary injunction was made permanent with a modification which will be noticed later, and the injunction prayed by the defendant was denied, 6 Fed. (2d) 21. The parties then were allowed cross appeals to this Court under § 238 of the Judicial Code as it.stood at that time. The complainant died shortly thereafter and his administratrix was substituted as a party in his stead, but for convenience we shall state the case and discuss it as if he were still living. The material facts will be stated.

The complainant, McNeely, is a citizen and resident of Mississippi and for more than 20 years has been operating a public ferry from Vidalia across the Mississippi River to Natchez and from Natchez to Vidalia. He has three boats in the service and has floating steel docks and other equipment at both Vidalia and Natchez which he uses in making landings and in receiving and discharging passengers and freight. The value of the boats and equipment is $50,000 or more and the yearly income from

the ferry is about $5,000. At Vidalia his floating docks and landing equipment have been moored and maintained at and near the foot of Concordia street, which was designated by the town as the landing place for his ferry when he began operating it. The variation in the rise and fall of the river is about 55 feet, and a levee extends along the bank and across Concordia street. So it has been essential for him to construct and maintain a ramp or graduated approach from his docks to the intersection of the street and levee. While operating the ferry, he acquired and still holds the lots abutting on the river for several hundred feet on either side of Concordia street. Occasionally he has moved his docks and landing facilities to one side of the street or the other, but only in front of his own lots. His boats have been duly inspected, enrolled and licensed under the navigation laws of the United States and are manned and operated conformably to the requirements of those laws; but he now has no local license to operate the ferry.

The suit was begun in October, 1924. Theretofore the complainant had been operating the ferry under licenses granted by Vidalia and Natchez, but these licenses had then terminated. Early in 1924 the town of Vidalia adopted an ordinance specially granting to the city of Natchez and its assigns a license to operate a public ferry from Vidalia to Natchez and return for a period of ten years, on stated terms whereby the licensee was to have the use of all streets and public places on the river side of the levee at Vidalia for a landing place and approaches, was to pay to Vidalia $1,000 per year during the life of the license, and was to have a preference right to receive, without further payment, any license which Vidalia might conclude to give for another ferry to Natchez.

The license so granted to the city of Natchez was transferred by it to the Royal Route Company, a corporation. Vidalia recognized the transfer and then adopted a fur-

ther ordinance designating for such assignee the same landing place at the foot of Concordia street which it theretofore had designated for the complainant and which he was still using. This ordinance forbade any one other than such assignee to moor, tie, anchor or keep any craft or object of any kind in the river within 150 feet of that landing place, imposed a substantial penalty for every violation of that provision, and directed the mayor and marshal of the town to remove immediately any offending craft or object found within such limits. No provision of any kind was made for another landing place for the complainant or for the further operation of his ferry or for the operation of any ferry other than that of such assignee.

The complainant, believing that Vidalia had exceeded its power in the premises, continued to operate his ferry, whereupon the town proceeded to arrest and punish him under the provisions just described. He then brought this suit, charging in the complaint that the ordinances and action of the town constituted such an interference with interstate commerce as is forbidden to a State and its agencies by the commerce clause of the Constitution of the United States. The District Court, while recognizing that in the absence of controlling congressional legislation the town possesses a substantial power of regulation in respect of the operation of such a ferry, was of opinion that its action in this instance was in excess of its power and therefore that the complainant was entitled to an injunction. It was also of opinion that the river bank from the levee to the water, although belonging to the owner of the adjacent land, is under the law of the State subject to a servitude permitting its use for various public purposes including that of using it as a place of landing for ferry boats and for receiving and discharging passengers and freight carried thereon; and that, while the designation of landing places as between competing

ferries is a matter ordinarily resting with local municipal authorities, Vidalia's discriminatory action towards the complainant had been such as to justify the court in making the designation. It accordingly designated for the Royal Route Company 300 feet of the bank and water frontage beginning 10 feet north of the north line of Concordia street and extending thence upstream, and confined the complainant to the portion beginning 10 feet south of the south line of the street and extending thence downstream.

The town renews the contention made below that, consistently with the commerce clause, it may grant or withhold a license to operate such a ferry, guided only by its judgment of what is in keeping with the public interest, and may prohibit the operation of such a ferry without a license from it. The argument advanced in support of the contention is that if local authorities may not control ferriage over boundary streams like the Mississippi by granting or withholding licenses the ferriage will be subject to no restrictions and the public may suffer from extortionate rates and an absence of provisions for safe carriage, because the nature of the business and varying local conditions make it impracticable for Congress to prescribe effective general regulations. We think the argument confuses power to license and therefore to exclude from the business with power to regulate it, and also that the contention is unsound.

The transportation of persons and property from one State to another is none the less interstate commerce because conducted by ferry; and it does not admit of question that ferries so employed are subject to congressional regulation. Congress has adopted some measures to promote the safety of this form of transportation, Rev. Stat. §§ 4233 (Rule 7), 4426; and also a measure regulating rates on ferries operated in connection with railroads,

*New York Central R. R. Co.* v. *Hudson County,* 227 U. S. 248, 263.

But, while holding that such interstate transportation is subject to congressional regulation, this Court always has recognized that ferries operated across boundary waters between States simply as a means of transit from shore to shore should be deemed instruments of local convenience and subject to local regulation to the extent that in the absence of congressional action each State may act with respect to the ferriage from its shore.   In *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 206, where particular state action in respect of an interstate ferry was condemned as placing an inadmissible burden on interstate commerce, there was express recognition of the authority of the State to prescribe " such measures as will prevent confusion among the vessels, and collision between them, insure their safety and convenience, and facilitate the discharge or receipt of their passengers and freight." In *Port Richmond Ferry Co.* v. *Hudson County,* 234 U. S. 317, 332, which related to a ferry between two States, there was express affirmation of the authority of each State to fix reasonable rates for the ferriage from its shore.   The Court said in that connection: " It has never been supposed that because of the absence of Federal action the public interest was unprotected from extortion and that in order to secure reasonable charges in a myriad of such different local instances, exhibiting an endless variety of circumstance, it would be necessary for Congress to act directly or to establish for that purpose a Federal agency.   The matter is illuminated by the consideration of this alternative for the point of the contention is that, there being no Federal regulation, the ferry rates are to be deemed free from all control.   The practical advantages of having the matter dealt with by the States are obvious and are illustrated

by the practice of one hundred and twenty-five years. And in view of the character of the subject, we find no sound objection to its continuance. If Congress at any time undertakes to regulate such rates, its action will of course control." But the Court was careful to indicate that the decision was not intended to give any sanction to " prohibitory or discriminatory requirements, or burdensome exactions," interfering with " the guaranteed freedom of interstate intercourse."

The case of *Sault Ste. Marie* v. *International Transit Co.*, 234 U. S. 333, is specially in point here. That was a suit by a Canadian corporation conducting a ferry between Sault Ste. Marie, Ontario, and Sault Ste. Marie, Michigan, to prevent the enforcement against it of an ordinance of the city of Sault Ste. Marie, Michigan, prohibiting the operation of a ferry from that city to the opposite shore of the St. Mary's River except under a license from that city and on the payment of a license fee of $50. The ordinance was assailed as being in conflict with the commerce clause of the Constitution and with a treaty with Great Britain. The Court sustained the constitutional objection and the plaintiff's right to an injunction without considering the treaty question. It said:

" The fundamental principle involved has been applied by this court in recent decisions in a great variety of circumstances, and it must be taken to be firmly established that one otherwise enjoying full capacity for the purpose cannot be compelled to take out a local license for the mere privilege of carrying on interstate or foreign commerce. [Citing cases.]

"Assuming that, by reason of the local considerations pertinent to the operation of ferries, there exists in the absence of Federal action a local protective power to prevent extortion in the rates charged for ferriage from the shore of the State, and to prescribe reasonable regulations

necessary to secure good order and convenience, we think that the action of the city in the present case in requiring the appellee to take out a license, and to pay a license fee, for the privilege of transacting the business conducted at its wharf, was beyond the power which the State could exercise either directly or by delegation."

The action of the town in this case is on the same plane. The complainant, according to the record, has full capacity to operate, and is operating, a serviceable ferry over the Mississippi and the town is attempting to exclude his ferry on the ground that he is operating it without a local license. The question is not whether the town may fix reasonable rates applicable to ferriage from its river front or may prescribe reasonable regulations calculated to secure safety and convenience in the conduct of the business, but whether it may make its consent and license a condition precedent to a right to engage therein. This we hold it may not do.

Both parties complain of the part of the decree designating the landing places to be used by the competing ferries—the town on the ground that it alone is clothed with authority to make such designations, and the complainant on the ground that the designation was made without proper regard for his ownership of the land or his prior use and improvements.

It must be conceded that the designation of places for ferry landings along the river bank within the town limits is a function which primarily belongs to the town and is not ordinarily subject to judicial control. But here the town proceeded on the erroneous theory that the complainant's ferry need not be considered. Not only was no new landing place assigned for his ferry, but the place theretofore and then in actual use for it was assigned to the competing ferry. In this the town plainly deviated from its duty in the premises, for it was under the same legal obligation to accord a landing place to

one ferry as to the other. We perceive no ground for holding that relief from such a deviation may not be had in a suit in equity. No case brought to our attention so holds. Certainly *Watson* v. *Turnbull,* 34 La. An. 856, cited by the town, does not do so.

The complainant's objection to the court's designation appears, meritorious at first, but it is otherwise when consideration is given to the settled rule in Louisiana that the banks of navigable streams are subject to a servitude permitting their use for public purposes including those incident to navigation, and that " Riparian proprietors have no right to appropriate to their exclusive use these banks, and they have no private property in the use thereof, which is public." Rev. Civ. Code, articles 455, 457, 665; *Watson* v. *Turnbull, supra.* This servitude has existed in Louisiana since before the creation of the State and has been recognized by this Court and held consistent with the Fourteenth Amendment. *Eldridge* v. *Trezevant,* 160 U. S. 452. Thus the complainant's ownership of the adjacent lots does not entitle him to be preferred over others in the use of the bank as a landing place. Nor does his prior use entitle him to have the other ferry excluded; for the evidence indicates that there is sufficient room on the two sides of Concordia street for both. And so far as appears the ramp constructed by him still may be used in going to and from his docks. In these circumstances we think the court's designation of the landing places should not be disturbed.

*Decree affirmed.*