GRACE H. MURRAY and Others, as Executors, etc., of ELIZABETH H. STANTON, Deceased, Plaintiffs, *v.* THE CITY OF NEW YORK, FRANK H. APPLETON, as Successor Trustee under Indenture and Deed of Trust Dated July 15th, 1922, A. GORDON MURRAY and Others, as Committee for the Holders of Eight Per Cent First Lien, Ten-Year Sinking Fund Gold Notes, Defendants.*

Supreme Court, Trial Term, New York County, June 8, 1937.

*Affd., without opinion, 252 App. Div. 853.

*A. Gordon Murray* [*George Gordon Battle* and *Albert G. Avery* of counsel], for the plaintiffs.

*Paul Windels, Corporation Counsel* [*Arthur A. Segall* of counsel], for the defendant City of New York.

*Julius Henry Cohen* [*Leander I. Shelley* and *Mortimer S. Edelstern* of counsel], for the Port of New York Authority, as *amicus curiæ.*

*John B. Doyle,* for the defendant Frank H. Appleton, as successor trustee, as *amicus curiæ.*

HOFSTADER, J. In 1922 the city of New York and the Jersey Coast Ferry Company, Inc., entered into an agreement under which the city leased to the ferry company a terminal to be thereafter constructed by it at Tottenville, Staten Island, together with the privilege or franchise to operate a ferry service between that point and South Amboy, N. J. On March 15, 1922, pursuant to the terms of this agreement, the company caused to be deposited with the comptroller of the city of New York $25,000 in stock as security for the faithful performance of the terms of the lease.

The city undertook to construct the Tottenville terminal, and by December, 1922, approximately eighty-five per cent of the work was completed. At this point, however, the city stopped further work as it appeared that the ferry company was making no definite progress either in the construction of its South Amboy terminal or in the acquisition of the ferry boats necessary for operation under the franchise. After several years of negotiation and discussion the ferry company was formally notified of its breach of the agreement and the claimed resultant damage in excess of $25,000.

The plaintiffs in this action, as the executors of Elizabeth H. Stanton, now deceased, claim that the stock was deposited as security by the decedent at the request of the ferry company; that they are the present owners of the stock in their representative capacity, and that the estate of Elizabeth H. Stanton is entitled to its return on the ground that the city defaulted in its obligations by failing to complete the Tottenville terminal. It is further claimed that the lease and franchise was *ultra vires* and beyond the jurisdiction of the city, as it had no right to grant a ferry franchise in light of the legislation creating the Port Authority and the commerce clause of the Federal Constitution. These contentions are without merit.

The ferry company is not a party to this action. Concededly, the plaintiffs sue in *quasi* contract to recover a benefit received under a contract by a party allegedly guilty of a repudiation, abandonment and substantial breach thereof. The plaintiffs have not sustained their position. Assuming, without deciding, that ownership of the stock has been proved, it has not been established that the comptroller of the city of New York is wrongfully withholding any funds to which the estate is entitled. Indeed, the contrary is shown, as it is clear from the evidence that the ferry company lacked the financial or other ability to carry out its obligations under the agreement. It may not be disputed that the ferry company did not construct the South Amboy terminal and that it merely expended the sum of $16,000 in the erection of a bulkhead.

While there is no specific provision in the contract requiring the ferry company to construct a terminal on the Jersey side of the river, the legal implication is clear both from the contract and the nature of the transaction that the parties were obliged to complete simultaneously their respective termini. The law imposes obligations commensurate with the intention of the parties (*Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 272; 3 Williston on Contracts, § 1293); and, obviously, in the nature of things, the contracting parties must have intended a ferry slip on either side of the river.

The ferry company being unable to carry out its part of the agreement, the city, which had performed substantially, was excused from further performance. (*DeForest R. T. & T. Co.* v. *Triangle R. S. Co.*, 243 N. Y. 283, 293.) Under the evidence the city was not constrained to complete the Staten Island slip and thereby increase its damages. It is enough that it was ready and able to complete its obligations upon reasonable assurance of the ability of the ferry company to proceed.

It has been shown that the damage to the city by reason of the default of the ferry company was in excess of $25,000. Accordingly, the right to receive back any portion of the deposit has not been established, and the city may properly retain the security deposited for the faithful performance of the terms of the agreement.

The power of the city to lease a ferry franchise between New York and New Jersey under section 83 of the Greater New York Charter has not been taken away by the legislation creating the Port of New York Authority (Laws of 1921, chap. 154). I accept as the controlling law the position taken by the Port of New York Authority in its brief filed as *amicus curiæ*, namely, that, in the absence of conflict by a specific project with the comprehensive plan, the power which the city has under section 83 of the charter with respect to the development or improvement of port and terminal facilities, including ferries, is unimpaired by the express terms of the treaty which created the authority. (See *Bush Terminal Co.* v. *City of New York*, 152 Misc. 144, for a history of the events leading to the creation of the Port of New York Authority and the early history of the authority itself.) Indeed, the enabling legislation (Port Authority Statutes, p. 21) expressly provides that " Nothing contained in this agreement shall impair the powers of any municipality to develop or improve port and terminal facilities," and a " terminal facility " is defined in the legislation as including " piers, slips, ferries, docks." (Port Authority Statutes [6th ed.], art. XXII, p. 25. See Laws of 1922, chap. 43; New Jersey Laws of 1922, chap. 9.) This provision is determinative of the question presented.

Nor is there any substance to the contention that the grant of this franchise conflicts with the commerce clause of the Federal Constitution. (*City of New York* v. *New Jersey & S. I. Ferry Co.*, 92 Misc. 40; affd., 173 App. Div. 496; *Mayor* v. *Longstreet*, 64 How. Pr. 30, 32; *People* v. *Babcock*, 11 Wend. 587; *Port Richmond Ferry* v. *Hudson County*, 234 U. S. 317; *Conway* v. *Taylor*, 1 Black [U. S.], 603, 635.) There is no Federal regulation with respect to ferries which cross boundary waters, and in the absence of such legislation, in any event, local authorities may act so long as there is no undue interference with interstate commerce. (*Mayor of Vidilia* v. *McNeely*, 274 U. S. 676, 681, 682.)

Motions of the plaintiff to strike out testimony are denied with an appropriate exception. Judgment for the defendant City of New York.