**UNITED TRUCK LINES, Inc., a Corporation, and Oregon-Washington Transport, a Corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14113.**

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1954.

George R. LaBissoniere, Seattle, Wash., William P. Ellis, Portland, Or., for appellants.

C. E. Luckey, U. S. Atty., Eugene, Or., Victor E. Harr, Asst. U. S. Atty., Portland, Or., William L. Harrison, San Francisco, Cal., Attorney, Interstate Commerce Commission, for appellee.

Before HEALY, POPE, and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

By information filed in the court below appellant United Truck Lines was charged with knowingly and willfully engaging in an interstate operation on a public highway as a common carrier by motor vehicle in violation of 49 U.S.C.A. § 306(a) and 18 U.S.C.A. § 2.[1] On a trial to the court it was adjudged guilty and fines were imposed.

The facts were stipulated. United, under a certificate of public convenience and necessity issued by the Interstate Commerce Commission, has authority to serve, among other areas, Benton County, Washington. It is not authorized to serve any point in Oregon in the considered area, specifically Umatilla County, Oregon. The two counties lie immediately opposite each other on either side of the Columbia River.

For the purpose of construction of the McNary Dam across the Columbia the United States preempted or reserved certain lands on both sides of the river, lying partly in one of the counties named and partly in the other. Construction was commenced on the Benton County side. United, under its certificate, could and did serve and transport property to that part of the project. When construction of the dam was shifted to the Oregon side, United extended its service to the part of the damsite lying in Umatilla County by crossing its trucks on a ferry owned and operated by Umatilla Ferry, Inc., a private corporation organized under the laws of Oregon. Upon landing on the Oregon shore United, by permission of the ferry company and Bonneville Power Administration, routed its vehicles to the McNary damsite reservation on a private way constructed by itself, extending some 1000 feet eastwardly along the river from the point where the ferry debarks its passengers.

The Interstate Commerce Act, in 49 U.S.C.A. § 306(a)(1), provides:

"No common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations * * *."

Title 49 U.S.C.A. § 303(a)(12) defines the term "highway," as used in the foregoing provision, as follows: "The term 'highway' means the roads, highways, streets, and ways in any State."

The question presented by the appeal is whether or not United's operation across the Columbia via the Umatilla Ferry was an operation on any public highway within the sense of these statutes.[2] There is no controversy in respect of the operation on United's private road beyond the ferry landing on the Oregon side. It is stipulated that a carrier may serve areas not authorized in its certificate if only private roads are used in the

---

1. The information further charged that United's co-appellant, Oregon-Washington Transport, knowingly and willfully aided and abetted United in the operation. Oregon-Washington Transport was adjudged guilty of the charge, but no question is made here on this phase of the case.

2. In addition, appellants undertake to argue that they "were not engaging in an interstate operation on the ferry." Under the statute and the stipulated facts, however, the interstate nature of the operation is incontrovertible. Oregon, by the terms of its admission act, retained title to the middle of the channel of the Columbia, and its territorial limits extend to that area.

beyond operation; but the private way must be entered from an authorized point or area.

The argument on behalf of appellants has to do with the legal status of the aforesaid Umatilla Ferry, Inc. The articles of that company provide in material part that "the object of this corporation, and the business in which it proposes to engage, is * * * to own and operate a ferry and to do a general ferry business for the purpose of carrying and transporting freight, passengers, baggage, mail and express and do a general ferry business for hire and for toll * * * ". Pursuant to the articles, the corporation holds, under a de facto arrangement with the Port of Umatilla and the Oregon State Land Board, a strip of land extending from the ferry landing to a Umatilla County highway—a distance of some 500 feet. A portion of this strip is improved by the corporation and provides the only means of ingress and egress of vehicular traffic between the ferry landing and the county highway. Likewise, on the Washington side the ferry company holds a lease to land extending a distance of 1500 feet from the ferry landing to a county highway, a strip of which land is improved and maintained by the company for vehicular traffic. This county road shortly connects with a Washington state highway traversing Benton county. The Umatilla county highway connects with U. S. No. 730, which traverses the town of Umatilla, Oregon. The ferry company maintains signs both in Oregon on U. S. No. 730, and in Washington on the state highway, advertising its presence and its advantages as a route of travel to numerous named points in both states.

The ferry company advertises and maintains a 24-hour service to the public generally. It charges a uniform toll for passengers and trucks, and pays to the United States Treasury a transportation tax as a public carrier. During two representative months—October and December 1952—the ferry transported a total of 16,406 passenger cars and trucks. The company does not hold a license, franchise, or certificate of any kind from any governmental body, agency, or otherwise, and is not regulated.

It is claimed that Congress meant to include as highways only those legally recognized and maintained as such in each state, inasmuch as the relevant federal law defines a highway as the roads, highways, streets and ways "in any state." Attention is called to an Oregon statute, § 366.005 Revised Statutes, which defines "State highway" as meaning "any road or highway designated as such by law or by the State Highway Commission pursuant to law and includes both primary and secondary state highways." Another Oregon statute provides that the term "road or highway" includes bridges, culverts and city streets. This statute, we are told, by implication excludes ferries from the definition.

We think it was the intention of Congress to prescribe its own definition of the term highway, and that state definitions do not govern. The congressional act has nationwide application whereas presumably the definition of the term in question varies from state to state. There would be no uniformity of application or administration if state laws must be looked to. Moreover, the statutory provisions must be read in light of the aim and purpose of the legislation.

■■ It is argued that the ferry cannot be considered a public highway because it is not regulated or operated under a franchise. It is not a public but a private ferry, say appellants. We do not agree. A private ferry is one mainly for the use of the owner. While the latter may take pay for ferriage, he does not follow that calling as a business. 22 Am. Jur. p. 553, § 2. As seen, the company here was incorporated for the sole purpose of conducting "a general ferry business for hire and toll." It extends its services to all comers, and the latter utilize the services in keeping with the declared purpose of the corporation. The corporate business is on its face clothed with a public interest; and while the

ferry may not be a public way by virtue of state law, it is made so by the facts. Cf. Munn v. Illinois, 94 U.S. 113, 132, 24 L.Ed. 77.[3]

Under the statutory definition, a "way" in any state is to be considered a highway. Traditionally, a public ferry, whether privately or publicly owned, has been a recognized "way" as an instrument of commerce. A ferryboat is such an instrument not less than a bridge. In City of New York v. Starin, 106 N.Y. 1, 12 N.E. 631, the court observed that "in a general sense, it [a ferry] is a highway over narrow waters." Cf., also Myers v. United States, 99 Ct.Cl. 158. That a ferry is a continuous part of a road or highway appears simply a common-sense proposition. Appellants argue, however, that the ferry in this instance can not be thought a continuation of a highway because, they say, the chain of continuity has been broken by the privately owned character of the road approaches on either side of the river. The argument is specious. By the very nature of a ferry the approaches to it are a necessary incident to its operation and are an integral part of the ferry owner's responsibility. In this case the short stretches of roadway connecting on either side with county highways are to be taken as part of the ferry service itself. They are like the ramps giving access to the ferry deck.

It is essential to bear in mind that the statute under consideration is one designed solely for the purpose of regulating transportation in interstate commerce on the public roads and ways in the states. The Commission's certificates of public convenience and necessity are not to be enlarged or circumvented by theoretical arguments which ignore the actualities of a particular situation.

Affirmed.

---

3. Consult, also, on the general subject Town of Vidalia v. McNeely, 274 U.S. 676, 47 S.Ct. 758, 71 L.Ed. 1292. Similarly to the present, that case had to do with a privately owned, unlicensed ferry plying regularly across the Mississippi River between the states of Louisiana and Mississippi. The court held that a state may not make its license a condition precedent to such interstate operation.