## McNEELY v. MAYOR AND BOARD OF ALDERMEN OF TOWN OF VIDALIA.

(District Court, W. D. Louisiana, Monroe Division. April 28, 1925.)

No. 211.

1. **Courts** ⟺96(1)—**District Court bound by rulings of Circuit Court of Appeals as to validity of ordinance granting exclusive franchise to operate interstate ferry.**

District Court of certain circuit is bound by rulings of Circuit Court of Appeals of such circuit as to validity of exclusive franchise to operate interstate ferry.

2. **Commerce** ⟺53—**Town cannot grant exclusive franchise to operate interstate ferry.**

A town cannot grant an exclusive franchise to operate a ferry from such town to point in other state, in view of effect on interstate commerce.

3. **Ferries** ⟺29—**Municipal corporation may fix status of ferry.**

Ordinarily, municipal corporation within boundaries of which ferries are to operate have power to fix a status for the continued operation of ferries, and courts should not interfere with the exercise of such power except in cases of unfair discrimination or abuse of power.

4. **Ferries** ⟺29—**While town may adopt regulations in assigning landing places for in-interstate ferries, it cannot discriminate and put operator out of business.**

While a town has the right ordinarily to police its river front and to adopt such regulations as are in accord with safety in assigning landing places for those engaged in operation of interstate ferries, it has not the right to discriminate and put a ferry operator out of business.

5. **Ferries** ⟺17—**Town could not deprive ferry operator of right to use certain frontage after use thereof for more than 20 years, by granting right to other operator.**

Where ferry operator had used certain point within town as landing place for more than 20 years and had acquired riparian rights under the state law, the town could not exclude his right to use of such frontage for such purpose by granting to another the right to operate ferry at such point with restriction on the right of others to approach nearer than 150 feet thereto.

6. **Ferries** ⟺19—**Ferry operator deprived of right to use frontage held entitled to equitable relief, notwithstanding exorbitant rates.**

Ferry operator, who had used certain frontage as landing place for more than 20 years and had acquired riparian rights therein, *held* entitled to relief against action of town in granting exclusive right to use such particular frontage for such purpose to other operator, de-

spite exorbitant charges previously exacted from public.

In Equity. Suit by S. B. McNeely against the Mayor and Board of Aldermen of the Town of Vidalia for injunction. Preliminary writs, as modified, made perpetual.

L. T. Kennedy, of Natchez, Miss., and Hugh Tullis, of Vidalia, La., for plaintiff.

G. P. Bullis, of Vidalia, La., and J. B. Brunini, of Vicksburg, Miss., for defendants.

DAWKINS, District Judge. The issues of this case have already been stated in the memorandum opinion filed on December 5, 1924 (6 F.[2d] 19), in which the preliminary injunction was granted. Subsequently, on application of the respondent, a preliminary writ was likewise granted in its favor and the parties assigned to certain localities for the operation of their respective ferries, and the order as modified reads as follows:

"It is therefore ordered and decreed that all writs heretofore issued in this matter be and they are hereby modified and reformed so as to operate as follows: The plaintiff, the said S. B. McNeely, shall be confined in his operations to the area south of Trinity street on the water's edge in the town of Vidalia, and in pursuing the operations of the said ferry, the docks and boats at all times shall be kept at a distance of ten feet south of the south line of said Trinity street, provided that he and his patrons for the purpose of reaching the said ferry boat and docks, shall have rights of ingress and egress over and across the intervening space so as to reach the outlet through Trinity street and the opening in the levee to the town of Vidalia.

"It is further ordered that the defendants, the town of Vidalia and its assignees, shall be and they are hereby confined to the area on the north side of said Trinity street, and in conducting their operations their docks and boats shall be at all times kept at a minimum distance of ten feet from the north line of said Trinity street, with the rights of ingress and egress to them and their patrons across the intervening space in such manner as may be necessary for the proper operation of their said ferry.

"It is further ordered and decreed that the said plaintiff, his agents and employees, and defendants, their agents and employees, be and they are hereby each enjoined and restrained from encroaching upon the area assigned to the other or in any manner interfering with each other in the operation of their respective ferries until the further orders of this court. All bonds and securities heretofore given in this proceeding on behalf of either side to continue and remain in full force and effect until modified or set aside by this court."

Under this decree both ferries are being operated at this time, and except as to the claim that the landing places are so close together as to cause the waves from the boats of respondent's assignee to interfere with the safe landing of those of complainant, the two systems appear to be running satisfactorily and with equal opportunity to compete for the business of the public.

The main questions involved in this case, that is, as to the right of the respondent to grant a franchise or exclusive privilege to operate a ferry across the Mississippi river, and their effect upon interstate commerce, have already been determined by the Court of Appeals for the Fifth Circuit in the case of the same complainant against the City of Natchez, Miss., 4 F.(2d) 899, dealing with the other end of the ferry on the Mississippi side, and as the opinion is short, I quote it in full, as follows:

"Appellant, S. B. McNeely, filed his bill, seeking interlocutory and final injunctions to prevent interference by the mayor and board of aldermen of the city of Natchez with his operation of a ferry on the Mississippi river between Natchez, Miss., and Vidalia, La. The case was heard on the application for the interlocutory injunction, and from an adverse ruling this appeal is prosecuted.

"There is no dispute as to the material facts, which are these: McNeely is the owner of three ferryboats, and for something over twenty years has been operating a ferry between Natchez and Vidalia, for which privilege he paid a license fee to each town. He also owns real property suitable for ferry landings on the river front, both at Vidalia and Natchez, and the necessary floating landing stages. His contract with Natchez has expired, and there is some question as to whether his license from Vidalia has been forfeited; but that is immaterial, as the same argument applies to both towns.

"In June, 1924, the city of Natchez adopted an ordinance providing for public ferries between the said two towns. The ordinance is rather lengthy, but may be thus epitomized: It prohibits the operation of a ferry from any other landing than that fixed in the ordinance, prescribes rates to be charged, schedules to be maintained, the size and character of boats to be employed, contemplates the granting of an exclusive privilege

to operate the ferry for the term of ten years, on payment of an annual fee of $2,000, and imposes a penalty of $30 a day on any one else operating a public ferry from the city of Natchez without a franchise from the mayor and the board of aldermen.

"Appellant alleges that his property, used in the operation of his ferry, is worth over $100,000, and it is admitted that it is worth $60,000. It is also admitted that his annual revenue exceeds $5,000, and that he will be totally deprived of it if the ordinance is made effective. It is the contention of appellant that it is beyond the power of the city of Natchez to exact a license fee for the operation of a ferry, as it would be a direct and unreasonable burden upon interstate commerce, and, furthermore, that the ordinance, if made effective, would deprive him of his property without due process of law. Appellees concede that the operation of a ferry across the boundary stream between two states is interstate commerce, but contend that an exception is made in the case of ferries, and that the states have the right to grant exclusive franchises for ferries operating from their own shores, as Congress has never legislated on this particular subject.

"This court had to consider practically the same question here presented in the case of Long v. Miller, 262 F. 362, and the decision in this case might be rested on the exhaustive and well-considered opinion of the late Judge George Whitfield Jack, adopted by the court in that case. Undoubtedly the earlier decisions tend to support the contention of appellees. But in the later cases, particularly Port Richmond Ferry v. Hudson County, 234 U. S. 317, 34 S. Ct. 821, 58 L. Ed. 1330, and the City of Sault Ste. Marie v. International Transit Co., 234 U. S. 333, 34 S. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574, it is clearly held that, while the states, and consequently municipal corporations acting upon their authority, may adopt and enforce reasonable regulations for the safety and convenience of the public using ferries, and may fix reasonable rates to be charged in carrying passengers, vehicles, and freight from their own shores, they cannot prohibit the operation of a ferry nor exact a license fee for the privilege of landing or taking on passengers, vehicles, etc.

"In justification of the ordinance it is the contention of appellees that it was designed to secure adequate service for the public at reasonable rates on ferries forming a connecting link between public highways in Louisiana and Mississippi; that the schedules maintained by appellant were inconvenient and insufficient and the rates charged by him were exorbitant; that if any one else was allowed to operate a ferry between Natchez and Vidalia, a ferry operated under the provisions of the ordinance would be unprofitable and could not be established, so that the public would suffer. Based on this, appellees say, as Congress has never legislated on the subject of ferries, it is within the province of the states to grant exclusive ferry franchises for the benefit of the public, and the burden on interstate commerce is negligible. Practically the same question, although applied to interstate highways, was recently considered by the Supreme Court in the case of Buck v. Kuykendall, 45 S. Ct. 324, 69 L. Ed. ——, and Bush v. Maloy, 45 S. Ct. 326, 327, 69 L. Ed. ——, both decided March 2, 1925, and the argument was declared to be unsound.

"Under authority of the cases above cited it would seem clear that appellant was entitled to a preliminary injunction to prevent interference with the operation of his ferry from his own landing. He could not be required to secure a license from the city of Natchez for that purpose, and the city could not prevent his using his own property as a landing under the conditions disclosed by the record.

"It is not contended that the ordinance was intended to apply to appellant, except to prohibit his operation of a ferry at all, so no question arises at this time as to any regulations provided by it.

"On the showing made, appellant was entitled to an interlocutory injunction to preserve the status quo pending a final determination of the suit on its merits.

"The judgment appealed from is reversed, and the case remanded, with instructions to grant an interlocutory injunction as prayed for."

[1, 2] I adopt the views therein expressed for the reasons: First, that I feel I am bound by the rulings of the Circuit Court of Appeals for this circuit; and, secondly, because they accord with my own.

[3] The remaining question is as to whether or not the showing made by complainant justifies me in attempting to fix a status for the continued operation of the two ferries. Ordinarily this is a power to be exercised by the municipal corporation within whose boundaries public utilities of this kind are to operate, and the courts should not interfere except in cases of unfair discrimination or abuse of discretion. At the inception of this controversy, the purpose of the respond-

ent was, avowedly, to restrict the operation of the ferry at Vidalia to one concern. The ordinances purporting to grant a franchise to the city of Natchez gave the latter "the use of all its streets and public places on the banks of the Mississippi river east of the levee for a landing place and approaches to said ferry." Ordinance No. 238, dated October 21, 1924, fixed the landing place for the beneficiary of the franchise mentioned under Ordinance No. 233 "at the foot of Concordia or Trinity avenue at the place where said Concordia or Trinity avenue intersects the waters of the Mississippi river, and the city of Natchez or its assigns are hereby ordered and directed to use said location for the landing place of said ferry." The said Ordinance No. 238 then prohibited any one from interfering with or obstructing the use of said landing place, and provided further that "no person, firm, or corporation shall moor, tie, anchor, or keep any vessel, barge, craft, or object of any kind in the waters of the Mississippi river within 150 feet of said landing place." Any one violating the provisions of said ordinance was made subject to fine and imprisonment. The mayor and marshal were ordered and instructed to "remove immediately any obstruction of said ferry landing and any vessel, barge, craft, or object of any kind, within the limits above stated."

Thus it is seen that the ordinances left apparently to the grantee under this purported franchise the privilege of selecting such frontage upon the river at the foot of the street mentioned as might in its judgment be necessary for its operation, and no one was allowed to approach nearer thereto than 150 feet. It so happened that this particular spot was the one which the complainant had been using for more than 20 years in his ferry business, and inasmuch as the opening through the public levee at Concordia or Trinity avenue was the only one permitted within a distance of several hundred feet, the physical situation was such that this made it next to impossible for complainant or any one else to operate a ferry from that point. All of this was done notwithstanding complainant's prior occupancy and use of the frontage in question for his business for many years, and notwithstanding he had purchased and owned such rights in the riparian front as were possible to acquire under the Louisiana law.

[4-6] While, as hereinbefore stated, I think the town has the right, ordinarily, to police its river front and to adopt such regulations as will accord with safety in the assigning of landing places for those engaged in interstate commerce, it has not the right thus arbitrarily to discriminate and to virtually put the complainant out of business. I am convinced that this was what respondent intended to do because of what it considered had been the unreasonable conduct of McNeely in the past. It is now contended by the respondent that in view of complainant's failure and refusal to meet the needs of the public in the past, and of what it terms his exorbitant charges to the public, McNeely is not in a position to ask relief at the hands of a court of equity. However, two wrongs never make a right, and I am impressed that it has been ultimately demonstrated that both sides have been at fault.

There is this to be said in McNeely's behalf, and that is, that his franchise granted in 1902 did not require him to operate his ferry at the times and under the conditions to the full extent demanded by respondent, though the growing needs of the public and a reasonable desire to serve and keep satisfied that public should have dictated a different course. The net result has been to break up complainant's former monopoly and to bring into the service a competitor, which will doubtless remove for the future any cause for complaint on the part of those who have to use the ferry; at the same time, the town cannot, for the reasons pointed out by the opinion of the Court of Appeals, exclude McNeely from the ferry business, and in prescribing regulations it must accord to him, as well as all others who may wish to engage therein, fair and equal treatment. The ordinances quoted indicate that it will not do this, and I think I am justified in continuing in force the orders heretofore entered fixing and designating the places on the river front to be used by the complainant as well as by the assignee of respondent. But, inasmuch as the complainant has the right to use the riparian front not otherwise required by the public, and it appearing that a space of 300 feet will be sufficient for the present needs of the respondent's assignee, the writ in respondent's favor should be so modified as to restrict the said assignee or operator of the ferry on the north side of Concordia or Trinity avenue, to a frontage of 300 feet beginning 10 feet north of the north line of said avenue and running with the river upstream a distance of 300 feet, with the rights and privileges provided in the decree hereinabove quoted rendered on the 22d day of January, 1925; otherwise complainant should have the unobstructed use of the riparian frontage of the property owned by him as

disclosed by the deeds filed in evidence in this case, but reserving to the town, in event future needs of the public should require, on proper application, to have the final decree in this case modified so as to permit the operation of additional ferries or public utilities along the municipal river front.

As thus modified, the order hereinabove quoted and dated the 22d day of January, 1925, is continued in force and the writs of injunction to that extent made perpetual.

The costs in this case are to be borne equally by complainant and respondent.