126 So.2d 24 (1960)
CITY OF THIBODAUX, Plaintiff-Appellee,
v.
LOUISIANA POWER & LIGHT COMPANY, Defendant-Appellant.
No. 5121.
Court of Appeal of Louisiana, First Circuit.
December 19, 1960.
Rehearing Denied January 30, 1961.
Certiorari Denied March 13, 1961.
*25 Monroe & Lemann, Andrew P. Carter, New Orleans, Harvey Peltier, Donald L. Peltier, Thibodaux, for appellant.
*26 Theo. Cangelosi, Baton Rouge, Remy Chiasson, Thibodaux, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY, and JONES, JJ.
ELLIS, Judge.
Appellant has appealed from a judgment rendered by the Seventeenth Judicial District Court signed on December 23, 1959, in favor of the City of Thibodaux in its action for a declaratory judgment as to its right to expropriate "all of defendant's electric distribution system located within the city of Thibodaux, as described in the detailed statement of property attached hereto, which said statement is made a part hereof, and is marked `Exhibit D' for identification, together with any and all rights and privileges defendant may have to operate an electric distribution system within the said City * * *" under and by virtue of the provisions of Act 111 of 1900, now LSA-R.S. 19:101 to 19:107, inclusive, and LSA-Revised Statutes of 1950, Title 13, Sections 4231-4246.
On February 4, 1957, the city filed a petition for expropriation under the authority of LSA-R.S. 19:101 et seq. in the Seventeenth Judicial District Court, which was timely removed by the appellant to the United States District Court for the Eastern District of Louisiana, New Orleans Division. A hearing was held by the United States District Court, and, based mainly upon the fact that "no authoritative interpretation of the statute, (Act 111 of 1900, LSA-R.S. 19:101 et seq.) has ever been made by the Louisiana court * * *" all proceedings were stayed in the case until an interpretation had been obtained from the Supreme Court of Louisiana. See City of Thibodaux v. Louisiana Power & Light Company, 153 F.Supp. 515, 517.
An appeal was taken to the United States Court of Appeal for the Fifth Circuit, 255 F.2d 774, which reversed the District Court but the United States Supreme Court granted certiorari and the judgment of the District Court was affirmed and the city was directed to bring a declaratory judgment action to obtain a declaration of its right to expropriate under the law. Louisiana Power & Light Company v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058. Accordingly the city brought this declaratory judgment action on August 7, 1959. Some exceptions were filed which have passed out of the case and after answer filed by the appellant the case was duly tried and resulted in a judgment for the plaintiff-appellee, granting the right to the City of Thibodaux to expropriate in accordance with its prayer. Hence this appeal.[1]
The plaintiff owns and operates electrical, gas and water plants within its municipal boundaries in order to serve the inhabitants therein, and in 1954 it annexed additional territory, or extended its limits, and thereupon extended its gas and water systems into this new area. Prior to the extension of its limits in 1954, the Louisiana Power and Light Company had been operating therein under a franchise from the Police Jury of the Parish of Lafourche. The plaintiff desired to furnish electricity to the inhabitants in the extended limits of the City, and in order to do so first attempted to acquire the facilities of the appellant within the extended limits with the exception noted, and upon its failure, the plaintiff instituted these expropriation proceedings.
*27 Plaintiff, in oral argument and brief, contends that the following statutes of the State of Louisiana completely authorize and empower it to construct, own, lease, and operate and/or expropriate electric light, gas, a water works plant, within its corporate limits, in this case, within the extended limits of the City of Thibodaux, and we quote such statutes:
LSA-R.S. 19:101
"Electric light, gas, or waterworks plants, expropriation; prescription of damage claims.
"Any municipal corporation of Louisiana may expropriate any electric light, gas, or waterworks plant or property whenever such a course is thought necessary for the public interest by the mayor and council of the municipality. When the municipal council cannot agree with the owner thereof for its purchase, the municipal corporation through the proper officers may petition the judge of the district court in which the property is situated, describing the property necessary for the municipal purpose, with a detailed statement of the buildings, machinery, appurtenances, fixtures, improvements, mains, pipes, sewers, wires, lights, poles and property of every kind, connected therewith, and praying that the property described be adjudged to the municipality upon payment to the owner of the value of the property plus all damages sustained in consequence of the expropriation. Where the same person is the owner of both gas, electric light, and water works plants, or of more than one of any one kind of plant, the municipal corporation may not expropriate any one of the plants without expropriating all of the plants owned by the same person.
"All claims for damages to the owner caused by the expropriation of any such property are barred by one year's prescription, running from the date on which the property was actually taken possession of and used by the political corporation."
LSA-R.S. 19:102
"Appointment of commissioners, duties, oath.
"Upon receipt of the petition filed pursuant to R.S. 19:101, the judge shall appoint six commissioners, who shall be property owners and residents of the parish. The commissioners shall carefully examine the property sought to be expropriated and shall make a detailed appraisal of its value, showing the separate valuation of the land, the buildings, the machinery, and the other property sought to be expropriated.
"Before beginning performance of their duties, the commissioners shall take an oath to faithfully and impartially discharge their duties."
LSA-R.S. 19:103
"Report of commissioners; notice to show cause.
"The commissioners shall make a report to the court of their investigation and estimate of valuation within fifteen days after the notification to them by the clerk of their appointment. The clerk shall then deliver to the sheriff a notice to both parties directing them to show cause within ten days after service of this notice why the report of the commissioners should not be approved by the court, and the sheriff shall serve this notice upon all parties to the proceedings as in ordinary cases."
LSA-R.S. 19:104
"Objections to report.
"If either party objects to the report of the commissioners, he shall file with the clerk a petition of opposition setting forth the objections and the reasons therefor. This opposition shall be tried and decided after hearing the *28 evidence of both parties, as in ordinary cases."
LSA-R.S. 19:105
"Appeal does not affect judgment.
"No appeal from the judgment of the lower court made by either party shall suspend the execution thereof. The payment of the amount decided on in the lower court by the municipal corporation to the owner or the deposit of that amount in the hands of the sheriff subject to the owner's order entitles the municipality to the title to the property in the same manner as a voluntary conveyance would do.
"If any change is made by the final decree in the decision of the cause, the municipality shall pay the additional assessment or may recover the surplus paid, as the case may be."
LSA-R.S. 19:106
"Costs; when paid by owner.
"If a tender is made by the municipality of the true value of the gas, electric light, or water works plant to the owner thereof, before proceeding to a forced expropriation, the costs of the proceedings shall be paid by the owner."
LSA-R.S. 19:107
"Encumbrances cancelled and paid; failure to pay amount fixed in due time.
"Whenever any gas, electric light, or water works plant encumbered with mortgages or privileges of any kind is expropriated by any municipality, it passes to the municipality free and clear of all encumbrances. However, the amount decreed to be paid therefor shall be paid by the corporation into the court within six months from the date of final judgment therein and distributed to the mortgage and privileged creditors according to their priority. In the event the municipal corporation fails to pay the amount fixed by the judgment of expropriation within six months after its rendition, the judgment becomes null and void and the municipality is liable for all damages suffered by reason of its failure to comply with the terms of the expropriation judgment."
LSA-R.S. 19:1
"`Property' defined.
"As used in this Part, the term `property' means immovable property, including servitudes."
LSA-R.S. 19:2(1)
"Expropriation by state or certain corporations.
"Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
"(1) The state or its political corporations or subdivision created for the purpose of exercising any state governmental powers."
LSA-R.S. 33:4621
"Authority to acquire property.
"Municipalities and parishes may expropriate and otherwise acquire any private property, within or without their limits, for any of the purposes for which they are organized, and for any works that they are authorized to own or operate, or which they are authorized to lease or donate to the United States. This Part shall not be construed to confer authority upon a parish or municipality to expropriate property in any other parish without the consent of the police jury of the parish in which the property is situated."
LSA-R.S. 33:4162
"Power to own and operate; power to lease.
"Any municipal corporation or any parish or any other political subdivision *29 or taxing district authorized to issue bonds under Section 14, of Article 14 of the Constitution of Louisiana of 1921, may construct, acquire, extend or improve any revenue producing public utility and property necessary thereto, either within or without its boundaries, and may operate and maintain the utility in the interest of the public.
"A municipal corporation may lease waterworks systems, electric light and power plants, combined water and electric systems, garbage plants, sewerage works, electric street and interurban railways, gas plants and distributing systems.
"No municipal corporation may lease or purchase gas fields, wells, lands or holdings for the purpose of drilling and operating gas wells.
"A parish may lease gas plants, gas distributing systems, gas wells, gas lands and holdings."
Section 2 of Article I of the Charter of the City of Thibodaux, being Act 266 of 1918, and amendments thereto, provides in part:
"It (the City of Thibodaux) may * * * construct, own, lease, and operate and regulate public utilities, within or without the corporate limits of the Town of Thibodaux * * *.

* * * * * *
"* * * shall have the power * * to acquire property in fee simple or lesser interest or estate by purchase, gift, devise, appropriation, lease, or lease with the privilege of purchase, for any municipal purpose * * *.
"* * * may acquire by condemnation or otherwise * * * public utilities, within or without the corporate limits of the Town of Thibodaux * * *."
The plaintiff rests its case upon the above quoted statutes of the State of Louisiana and its rebuttal or answer to the legal defenses made by the appellant in resisting its right to expropriate under the authority of the quoted statutes. We shall, therefore, proceed to consider the defenses of the appellant upon which it relies to defeat the apparent right of the plaintiff to expropriate its facilities within the extended limits of the City.
1. An Electric Distribution System Is Not A Proper Subject Of Expropriation.
Appellant in its brief contends that LSA-R.S. 19:101 et seq. must be read in conjunction with LSA-R.S. 19:1 et seq., the latter being the general expropriation act of 1948 which specifically defines property as "immovable property, including servitudes" and, therefore, submits that the distribution system sought to be expropriated by plaintiff in this suit, together with the franchise rights, clearly includes more than immovable property.
It relies mainly upon an opinion of the Attorney General rendered to the Town of Winnfield under date of October 10th, 1951 which we set out in full:
"The following factual situation is presented in your letter to the Attorney General, bearing date of October 5, 1951.
"The Town of Winnfield owns and operates an electricity and water distribution system. The Louisiana Light and Power Company runs its electric power lines across the northwestern area of said town and furnishes electric service to the residents of such area. The territory over which the lines of said company run was located outside the incorporated limits of said town when first said lines were installed; now, however, said territory has been brought within the incorporated municipal limits.
"After explaining the reasons which prompt action of same character by the governing authority of the municipality, you ask, first, what might be done legally to bring about an amicable acquisition of *30 the Louisiana Light and Power Company's power lines and electricity distribution system that are located within the town; and second, in default of amicable acquisition, whether such acquisition could be accomplished by expropriation proceedings.
"When the lines, equipment, and facilities of the company were installed, the area involved was located in Winn Parish, outside the municipal limits of Winnfield. With full authority to act, the Police Jury granted a limited franchise to the Company. It is our view, therefore, that the Company's franchise, though limited, constitutes a vested right, no matter that the territory traversed by the Company's lines, and system now lies within the corporate limits of the town, and that any acquisition of such lines, equipment and other property of the system, short of an amicable transfer, would violate the constitutional rights of the Company.
"A municipality has the same legal right to acquire a public utility as it does to construct a new one or to extend and improve an existing one; therefore, we see no reason why an amicable purchase of the Louisiana Power and Light Company's system within the area may not be effected. It should be borne in mind, however, that if any bonds are outstanding on the town's presently existing electricity and water distribution plant, equipment and facilities, no action should be taken prejudicial to the rights of the bondholders in bringing the Louisiana Power and Light Company's system within that which is owned and operated by the municipality.
"Presumably, revenue would have to be raised beyond the current case, resources of the town to effect the purchase. Your attention is accordingly directed to Article XIV, Section 14(m) of the Louisiana Constitution [LSA], relative to the issuance of bonds for the purpose of constructing, acquiring, extending or improving any revenue producing public utility.
"In Default of amicable purchase, we do not believe that the right of expropriation would lie. Pretermitting other considerations that might negate such right, we advise you that the right of expropriation relates to lands. This right does not extend to movables, facilities, equipment, etc. Even if certain structures along the company's right-of-way are classified as immovables by nature, and even if certain equipment and permanently attached movables forming a part of the physical layout are classified as immovables by destination, it must be borne in mind that all such elements are a part of the system, and the municipality can no more expropriate a public utility distribution system than it can expropriate a franchise validly issued at its inception by the police jury."
We see no reason which would make it mandatory that LSA-R.S. 19:101 et seq. be read together with LSA-R.S. 19:1 et seq. The term "Property" as defined in the latter is also restricted by the words "as used in this Part," whereas the former is "Part 3" of Title 19 as distinguished from the quoted provision in the first section of "Part 1" of Title 19. In addition, the Legislature intended that both enactments be given full effect as written by re-enacting in 1951 in the State's Annotated Statutes, Act 111 of 1900, LSA-R.S. 19:101 to 19:107 and the general expropriation act of 1948, which was enacted as LSA-R.S. 19:1 et seq. When this is done it is not necessary that we consider the definition of property in one as limiting, or conflicting with, the kind of property that may be expropriated under the terms of the other enactment.
Insofar as the opinion from the Attorney General's office of the State of Louisiana is concerned, it does not have the force of law, although the courts have many times recognized the value of such opinions in solving difficult legal problems presented to them. However, it is noted that this opinion in 1951 failed to mention a single statute dealing with expropriation by a municipality of electricity and water *31 distribution systems, which was the subject of the opinion, despite the statutory law, supra, of our state, and federal constitutional provisions, viz., Louisiana Constitution, Article 1, Section 2 and Article 4, Section 15, and United States Constitution Section 10 of Article 1, and the Fourteenth Amendment to the Federal Constitution, as well as the jurisprudence of Louisiana, other states, and of the Federal courts. The writer of the opinion was in error when he stated that the right of expropriation relates to lands but does not extend to movables, facilities, equipment, etc., and that even if the structures along the company right of way are classed as immovable by destination they are a part of the system "and the municipality can no more expropriate a public utility distribution system than they can expropriate a franchise validly issued at its inception by the Police Jury."
In view of the statutory law of Louisiana in effect in 1951 at the time this opinion was rendered, supra, and the jurisprudence, both Federal and State, which will be hereinafter cited and quoted from, and the re-enactment of Act 111 of 1900 in 1951 by the Legislature as a part of our Louisiana Statutes Annotated, under "Part III. Expropriation By Municipalities Of Some Public Utilities" and being entitled LSA-R.S. 19:101 to 19:107, inclusive, we cannot agree with the opinion relied upon to substantiate the appellant's contention that an electric distribution system was not a proper subject for expropriation by the plaintiff municipality.
2. The Expropriation Of A Franchise Is Not Authorized By Law In Louisiana.
Appellant in its brief frankly states that the question of taking the company's franchise is closely connected to the company's contentions regarding the impairment of obligation of contract, the nonexclusive nature of franchise, and the monopoly arguments advanced by it in its brief to defeat plaintiff's action, and respectfully requests this court to consider these questions together under this heading.
With regard to the lack of authority on the part of the plaintiff to expropriate the franchise of the appellant, it is contended that as the franchise was granted by the police jury of the parish of Lafourche, and not by the city, assuming for the sake of argument that LSA-R.S. 19:101 to be valid and applicable as applied to the expropriation of the company's property, a search of the statute in question will reveal that it does not contain an express right to expropriate such a franchise. It is further contended that LSA-R.S. 33:4361 specifically grants the police jury the right to grant franchises over the public roads and streets of their respective parishes, not within the limits of any municipality, and the police jury of Lafourche Parish has granted to the company valid franchises under this statute, including the right to serve in the area here involved, and, therefore, in order for a municipality inside a parish to expropriate rights granted by the police jury of the parish, clear and explicit authorization would be required, and none is granted in LSA-R.S. 19:101 nor in the general expropriation provisions of Title 19, Section 1 et seq. of the Revised Statutes, Appellant then poses the question at issue as being "whether a municipality can take a vested right by eminent domain, which vested right was granted by another political subdivision of a higher level. * * * However, the parish of Lafourche granted these franchises and we most emphatically urge that it would take an express and explicit authorization by the statutes of Louisiana to permit a municipality to take a vested right granted by a parish government."
Appellant argues under Heading 3, which it has asked that we include in dealing with Number 2, that the nature of the franchise under LSA-R.S. 33:4401 "shall not be exclusive nor be for a longer period than twenty-five years * * *" and that Act 55 of 1928 (now contained in LSA-R.S. 33:4402) says that: "Such franchises shall in no event be exclusive nor for a longer *32 period than twenty-five years * * *" and that each time the Attorney General has been requested to render an opinion on this subject, he has steadfastly advised that the franchise shall not be exclusive, from which it would be safe to say that it is the public policy of the State of Louisiana that franchises should neither be perpetual nor exclusive, and, accordingly, even if the city were to acquire the physical property of the company, the public policy of Louisiana would lead inescapably to the conclusion that the City should not have the right to take the vested franchise granted to the company by the parish.
Appellant then puts forth its contention "4" to the effect that this expropriation seeks to create a prohibitive monopoly contrary to Article 19, Section 14 of the Louisiana Constitution. Since the city already provides a gas service and is seeking to expropriate the company's electric facilities and any and all rights and privileges it may have to expropriate the same without the city, all evidence is that the city is seeking to establish a monopoly in that it will have the ability to restrain trade in the electrical and gas utility business in the city if it is successful. It argues: "But if the city is permitted to succeed in this action, then one owner will operate and exclusively control all gas and electric service in the City, as it pleases, subject to no regulation or supervision by any regulatory body. Trade is restricted. Monopoly is effected." (Emphasis added.)
We will now proceed to take up the contentions of appellant as outlined above.
Before proceeding with the question of whether the expropriation of a franchise is authorized by law in Louisiana, the nature of the franchise, and the creation of a prohibitory monopoly by granting the expropriation, let us get a clear definition of the franchise, Black's Law Dictionary defines "franchise" as follows:
"A special privilege conferred by government on individual or corporation and which does not belong to citizens of country generally of common right. Elliott v. City of Eugene, 135 Or. 108, 294 P. 358, 360. In England it is defined to be a royal privilege in the hands of a subject.

* * * * * *
"General and Special. The charter of a corporation is its `general' franchise, while a `special' franchise consists in any rights granted by the public to use property for a public use but with private profit. Lord v. Equitable Life Assur. Soc., 194 N.Y. 212, 87 N. E. 443, 22 L.R.A.,N.S., 420.
"Personal Franchise. A franchise of corporate existence, or one which authorizes the formation and existence of a corporation is sometimes called a `personal' franchise as distinguished from a `property' franchise, which authorizes a corporation so formed to apply its property to some particular enterprise or exercise some special privilege in its employment, as, for example, to construct and operate a railroad, See Sandham v. Nye, 9 Misc. Rep. 541, 30 N.Y.S. 552.
"Secondary Franchises. The franchise of corporate, existence being sometimes called the `primary' franchise of a corporation, its `secondary' franchises are the special and peculiar rights, privileges, or grants which it may receive under its charter or from a municipal corporation, such as the right to use the public streets, exact tolls, collect fares, etc. State v. Topeka Water Co., 61 Kan. 547, 60 P. 337; Virginia Canon Toll Road Co. v. People, 22 Colo. 429, 45 P. 398, 37 L. R.A. 711. The franchises of a corporation are divisible into (1) corporate or general franchises: and (2) `special or secondary franchises.' The former is the franchise to exist as a corporation, while the latter are certain rights and privileges conferred upon existing corporations. Gulf Refining Co. v. Cleveland Trust Co., 166 Miss. 759, 108 So. 158, 160."
*33 Thus the franchise in the case at bar granted in 1927 consisted of a grant of certain rights and privileges by the Parish of Lafourche to the appellant, Louisiana Power and Light Company, to construct, maintain, operate, distribute, all necessary electrical facilities to the inhabitants within the confines of the territorial limits of the grant. Every right granted under the franchise by the police jury of the Parish of Lafourche was subject at that time to Act 105 of 1892, now LSA-R.S. 33:151 to 33:161, which was the law permitting municipalities to extend their boundaries and, also, to Act 111 of 1900, now LSA-R.S. 19:101 to 19:107, which authorized the expropriation by municipalities of utility properties. It is admitted by appellant that the plaintiff since 1927 has on many occasions changed its city limits, taking in additional territory under the cited law, supra. The extension of the limits of the plaintiff in this case had the immediate effect of placing within the territorial bounds of the extension the area subject to all existing laws under and by which a municipality governs and is governed, to the same extent as if the additional territory had been included in the original limits defined in the charter or laws originally creating the municipality. In addition, the electrical facilities of the appellant herein sought to be expropriated, lying and being situated within the extended limits of the municipality of Thibodaux, immediately became subject to the expropriation act in question, LSA-R.S. 19:101 et seq., and the expropriation of the electric distribution system of appellant would include the franchise, as the latter was a grant or right given by the parish to appellant to construct the system and serve electricity to the inhabitants within the bounds of what is now the extended limits of the plaintiff. The purpose of the expropriation is to furnish electricity to the inhabitants by the municipality. The completed distribution system was an integral part of the privilege (franchise) as well as the right to furnish electricity to the inhabitants in the area. Both would be included in an expropriation. The appellant would no longer enjoy a franchise, that is, the ownership of the system and the privilege of furnishing electricity to the inhabitants within the extended area of the municipality. The answer to the question posed is that a municipality can take a franchise as in the case at bar, the electric distribution system and the right to serve the inhabitants in the municipality, by eminent domain, even though the franchise was granted by the police jury prior to the addition of the extended territory in question to the municipality.[2]
We now come to the appellant's contention that the expropriation seeks to create a prohibitive monopoly as contained in Louisiana Constitution, Article 19, Section 14, which is as follows:
"Monopolies, trusts, combinations or conspiracies in restraint of trade.
"Section 14. It shall be unlawful for persons or corporations, or their legal representatives, to combine or conspire together, or to unite or pool their interests for the purpose of forcing up *34 or down the price of any agricultural or manufactured product or article of necessity, for speculative purposes, and all combinations, trusts, or conspiracies in restraint of trade, commerce or business, as well as all monopolies or combinations to monopolize trade, commerce or business, are hereby prohibited in the State of Louisiana, and it shall be the duty of the Attorney General, of his own motion, or any District Attorney of the State, when so directed by the Governor or the Attorney General, to enforce this provision, by the injunction or other legal proceedings, in the name of the State of Louisiana, and particularly by suits for the forfeiture of the charters of offending corporations, incorporated under the laws of the State of Louisiana, and for the ouster from the State of foreign corporations. Provided, however, that nothing herein contained shall prevent the Legislature from providing additional remedies for the enforcement of this Section. (As amended Act 1936, No. 318, adopted Nov. 3, 1936.)"
The District Judge held that: "A mere reading of these provisions made clear their intent to prevent the harmful combination of private corporations against the public interest, rather than to prohibit expropriation by a public body, of utility properties solely within its own municipal limits." (Emphasis added.)
In support of its contention made in its brief that the lower court was in "extreme error" in the above holding, the appellant cites the case of McNeely v. Mayor and Board of Aldermen of Town of Vidalia, D.C., 6 F.2d 21; Id., 274 U.S. 676, 47 S.Ct. 758, 760, 71 L.Ed. 1292.
This was a suit to restrain the town of Vidalia, Louisiana, from unwarrantedly interfering with the operation by McNeely of a public ferry from that town across the Mississippi River to Natchez, Mississippi. It appeared that McNeely, a citizen-resident of Mississippi, had been operating a public ferry from Vidalia across the Mississippi River to Natchez and from Natchez to Vidalia for more than twenty years. He had three boats in the service and had floating steel docks and other equipment at both Vidalia and Natchez which he used in making landings and in receiving and discharging passengers and freight. At Vidalia the floating docks and landing equipment had been moored and maintained at and near the foot of Concordia Street which was designated by the town as the landing place for his ferry when he began operating it. His boats had been duly inspected, enrolled and licensed under the navigation laws of the United States, and were manned and operating conformably to the requirements of those laws. McNeely had been operating his ferry under licenses granted by Vidalia and Natchez but the licenses had been terminated. Vidalia adopted an ordinance specially granting the City of Natchez and its assigns a license to operate a public ferry from Vidalia to Natchez and return for a period of ten years, on stated terms whereby the licensee was to have the use of all streets and public places on the river side of the levee at Vidalia for a landing place and approaches, for which it was to pay $1,000 per year during the life of the license, and was to have a preference right to receive, without further payment, any license which Vidalia might conclude to give for another ferry to Natchez. The license granted to the City of Natchez was transferred by it to the Royal Route Company, a corporation. Vidalia recognized the transfer and then adopted a further ordinance designating for such assignee the same landing place at the foot of Concordia Street which it theretofore had designated for McNeely and which he was still using. This ordinance forbade anyone other than the assignee to moor, tie, anchor, or keep any craft or object of any kind in the river within 150 feet of that landing place, and imposed a substantial penalty for every violation of that provision, and directed the *35 mayor and marshal of the town to remove immediately any offending craft or object found within such limits. No provision of any kind was made for another landing place for McNeely or for the further operation of his ferry, or for the operation of any ferry other than that of such assignee.
McNeely, believing that Vidalia had exceeded its power in the premises, continued to operate his ferry, whereupon the town proceeded to arrest and punish him under the provision just described. He then brought this suit charging in the complaint that the ordinances and action of the town constituted such an interference with interstate commerce as is forbidden to a state and its agencies by the commerce clause of the Constitution of the United States. The District Court, while recognizing that, in the absence of controlling congressional legislation, the town possesses a substantial power of regulation in respect of the operation of such a ferry, was of the opinion that its action in this instance was in excess of its power, and therefore that the complainant was entitled to an injunction. It was also of the opinion that the river bank from the levee to the water, although belonging to the owner of the adjacent land, is under the law of the State subject to a servitude permitting its use for various public purposes including that of using it as a place of landing for ferry boats and for receiving and discharging passengers and freight carried thereon, and that, while the designation of landing places as between competing ferries is a matter ordinarily resting with local municipal authorities, Vidalia's discriminatory action toward McNeely had been such as to justify the court in making the designation. It accordingly designated for the assignee company 300 feet of the bank and water frontage beginning at a certain point on the north line of Concordia Street and extending thence upstream and confined McNeely to the portion beginning ten feet south of the south line of the street and extending thence downstream.
The Town of Vidalia, in the Supreme Court, renewed the contention, made below, that consistently with the commerce clause, it could grant or withhold a license to operate such a ferry, guided only by its judgment of what is in keeping with the public interest, and may prohibit the operation of such a ferry without a license from it. The Town of Vidalia advanced the argument in support of this contention that, if local authorities may not control ferriage over boundary streams like the Mississippi by granting or withholding licenses, the ferriage would be subject to no restrictions and the public may suffer from extortionate rates and an absence of provisions for safe carriage, because of the nature of the business and the varying local conditions made it impracticable for Congress to prescribe effective general regulations.
In answering this argument of the Town of Vidalia, the Supreme Court of the United States said:
"We think the argument confuses power to license, and therefore to exclude from the business, the power to regulate it, and also that the contention is unsound.

* * * * * *
"But, while holding that such interstate transportation is subject to congressional regulation, this court always has recognized that ferries operated across boundary waters between states simply as a means of transit from shore to shore should be deemed instruments of local convenience and subject to local regulation, to the extent that, in the absence of congressional action, each state may act with respect to the ferriage from its shore * * *.

* * * * * *
"But the court was careful to indicate that the decision was not intended to give any sanction to `prohibitory or discriminatory requirements, or burdensome exactions,' interfering with *36 `the guaranteed freedom of interstate intercourse.'

* * * * * *
"The action of the town in this case is on the same plane. The complainant, according to the record, has full capacity to operate, and is operating, a serviceable ferry over the Mississippi and the town is attempting to exclude his ferry on the ground that he is operating it without a local license. The question is not whether the town may fix reasonable rates applicable to ferriage from its river front or may prescribe reasonable regulations calculated to secure safety and convenience in the conduct of the business, but whether it may make its consent and license a condition precedent to a right to engage therein. This we hold it may not do."
We do not think this case is apposite or controlling of the case at bar. This case stands for the proposition that the town could not interfere with the "guarantee of interstate intercourse" through local regulations.
The possibility that the municipality might charge higher rates than the former owner and operator of the utilities is not restrictive of the municipality's power to expropriate. The question of exhorbitant or illegal rates would address itself to the Commission and the courts. We agree with the District Judge that Article 19, Section 14 of the Louisiana Constitution is not applicable to the question before the court, viz., the right of the municipality to expropriate under the facts and law.
We next come to the question raised by the appellant that the proposed exercise of eminent domain in this case is in violation of the Louisiana and Federal Constitutions, being Article 1, Section 10 of the United States Constitution, and the Fourteenth Amendment to the Federal Constitution, and the Louisiana Constitution, Article 1, Section 2, and Article 4, Section 15, which for the purpose of this case are one and the same, that is, are answered by the same conclusion.
We believe that the question of violation of the Federal and State Constitutions is fully answered in the plaintiff's brief and we quote:
"(1) Defendant first alleges that, insofar as it purposes to authorize the condemnation of the Company's property or its right to operate in the area recently acquired by the City of Thibodaux, Act 111 of 1900 (or any other statute so construed) works as `impairment of the obligation of contracts' in violation of the Contract Clause of Section 10 of Article 1 of the U. S. Constitution and effects a `taking of property without due process of law' in contravention of the Fourteenth Amendment to the Federal Constitution, because the Company's right to operate in the area was conferred by, and its property was installed under, franchises granted by the Parish authority (R. 26-36) and allegedly confirmed both in writing (R. 36-37) and verbally by the City. (See Answer, Paras. XIII, XIV, XXI.) Pretermitting all questions as to the existence, initial validity, or present force, of the agreements alleged, it was long ago decided by the U. S. Supreme Court that neither of the Constitutional provisions relied on forms a bar to the abrogation of such contracts in the exercise of the power of eminent domain. West River Bridge v. Dix, 6 How. 507 [12 L.Ed. 535] (1848); Long Island Water-Supply Co. v. [City of] Brooklyn, 166 U.S. 685 [17 S.Ct. 718, 41 L.Ed. 1165] (1896). All conceivable questions arising out of the facts of the case at bar were authoritatively settled by the decision in the Long Island Water Supply Co. Case, involving a very similar situation, from which the following passage is pertinent (116 U.S. at 688-691 [17 S.Ct. 718]):
"`The contention of plaintiff in error is that the proceedings had under the statute which resulted in the judgment of condemnation violate section 10, article 1, of *37 the Constitution of the United States, which forbids any State to pass a law impairing the obligation of contracts, and were not "due process of law," as required by the Fourteenth Amendment.
"`With reference to the first part of this contention it is said that in 1881 the town of New Lots made a contract with the water supply company by which for each and every year during the term of twenty-five years it covenanted to pay to the company so much per hydrant for hydrants furnished and supplied by it; that the act of annexation continued the burden of this obligation upon the territory within the limits of the town, although thereafter the town as a separate municipality ceased to exist, and the territory became simply a ward of the city of Brooklyn; that the condemnation proceedings destroyed this contract and released the territory from any obligation to pay the stipulated hydrant rental; that a State or municipality cannot do indirectly what it cannot do directly; that as the municipality could not by any direct act release itself from any of the obligations of its contract, it could not accomplish the same result by proceedings in condemnation. We cannot yield our assent to this contention. All private property is held subject to the demands of a public use. The Constitutional guarantee of just compensation is not a limitation of the power to take, but only a condition of its exercise. Whenever public uses require, the government may appropriate any private property on the payment of just compensation. That the supply of water to a city is a public purpose cannot be doubted, and hence the condemnation of a water supply system must be recognized as within the unquestioned limits of the power of eminent domain. It matters not to whom the water supply system belongs, individual or corporation, or what franchises are connected with itall may be taken for public uses upon payment of just compensation. It is not disputed by counsel that, were there no contract between the company and the town, the water works might be taken by condemnation. And so the contention is practically that the existence of the contract withdraws the property, during the life of the contract, from the scope of the power of eminent domain, because taking the tangible property will prevent the company from supplying water, and, therefore, operate to relieve the town from the payment of hydrant rentals. In other words, the prohibition against a law impairing the obligation of contracts stays the power of eminent domain in respect to property which otherwise could be taken by it. Such a decision would be far reaching in its effects. There is probably no water company in the land which has not some subsisting contract with a municipality which it supplies, and within which its works are located and a ruling that all those properties are beyond the reach of the power of eminent domain during the existence of those contracts is one which, to say the least, would require careful consideration before receiving judicial sanction. The fact that this particular contract is for the payment of money for hydrant rental is not vital. Every contract is equally within the protecting reach of the prohibitory clause of the Constitution. The charter of a corporation is a contract, and its obligations cannot be impaired. So it would seem to follow, if plaintiff in error's contention is sound, that the franchises of a corporation could not be taken by condemnation, because thereby the contract created by the charter is impaired. The privileges granted to the corporation are taken away, and the obligation of the corporation to perform is also destroyed.
"`The vice of this argument is twofold. First, it ignores the fact that the contract is a mere incident to the tangible property; that it is the latter which, being fitted for public uses, is condemned. And while the company, by being deprived of its tangible property, is unable to perform its part of the contract, therefore can make no demands upon the town for performance of its part, it still is true that the contract is not the thing which is sought to be condemned, *38 and its impairment, if impairment there be, is a mere consequence of the appropriation of the tangible property. Second, a contract is property, and, like any other property, may be taken under condemnation proceedings for public use. New Orleans Gas Co. v. Louisiana Light Co., 116 [115] U.S. 650, 673 [6 S.Ct. 252, 29 L.Ed. 516]. Its condemnation is of course subject to the rule of just compensation, and that is all that is implied in the decisions such as Hall v. Wisconsin, 103 U.S. 5 [26 L.Ed. 302], cited by counsel. * * *
"`The true view is that the condemnation proceedings do not impair the contract, do not break its obligations, but appropriate it, as they do the tangible property of the company, to public use. ([115 U.S.] at 688-691 [6 S.Ct. 252])'
"These decisions have been so consistently followed since that it is now extremely rare to find this argument raised. See Greenwood v. Fright [Freight] Co., 105 U. S. 13, 22 [26 L.Ed. 961] (1881); Richmond Etc. Railroad Co. v. Louisa Railroad Co., 13 How. 71, 83 [14 L.Ed.55] (1851); Menongahela [Monongahela] Navigation Co. v. United States, 148 U.S. 312; 341 [13 S.Ct. 622, 37 L.Ed. 463] (1893); New Orleans Gas Co. v. Louisiana Light Co., 115 U.S. 650, 673 [6 S.Ct. 252] (1885); [City of] Cincinnati v. Louis [Louisville], & Nash. R. R. Co., 223 U.S. 390, 400 [32 S.Ct. 267, 56 L.Ed. 481] (1911). See also Joyce, Treatise on Franchises (1909) Sees. 332-333, pp. 522-526; 11 McQuillin, Municipal Corporations (3d ed. 1950) Sec. 32.65, pp. 390-394, I Pond, Public Utilities (4th ed. 1933) Sec. 242, pp. 528 ff.; 3 id., Secs. 861-862, pp. 1721, 1724; I Nichols, Eminent Domain, (3d ed. 1950), Sec. 4.3 et seq., pp. 297 ff.; II ed., Sec. 5.75, pp. 98-100.
"Moreover, in this particular case, when the company acquired its franchises in 1927, that grant was subject to the then existing law permitting municipalities to extend their boundaries (Act 105 of 1892, now LSA-R.S. 33:151 to 33:161) and also, of course, Act 111 of 1900 authorizing the expropriation of utility properties. How can the Company, given such notice, now complain?
"The decisions cited by the Company are to the effect that a municipality, having once granted a privilege to a public service corporation, cannot subsequently tax the exercise of the privilege, or arbitrarily revoke it, because the city is, like any one else, bound by its contracts. This principle we readily concede. But the rule refers to the police power of municipalities, not to an exercise of the power of eminent domain, under which the sovereign, and those to whom the power has been delegated, may, at any time, through proper judicial proceedings, expropriate any needed property, including a franchise, for public purposes, upon the payment of just compensation.
"Thus, even assuming the company's franchises are valid and were ratified by the City of Thibodaux, the fact remained that both defendant's physical property, and its right to operate within the municipal limits, may be expropriated. It is then a constitutional taking, which estoppel cannot bar, and no contract can inhibit. As McQuillan says:
"`A municipal corporation cannot surrender or preclude itself from the exercise of the power of eminent domain; and an agreement by a municipality that the power of eminent domain shall not be exercised in a particular manner or in respect to certain property is null and void.' 11 McQuillan, Municipal Corporations, (3d ed. 1950) Sec. 32.65.

* * * * * *
"(1) The same `impairment of the obligation of contracts' and `due process' arguments made under the Federal Constitution (A(1) Supra.) were raised under the Louisiana Constitution, Article 1, Section 2, and Article 4, Section 15. The first cited section reads:
"`No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in *39 this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.'
"The other section invoked provides:
"`No ex-post facto law, nor any law impairing the obligations of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid.'
"Defendant, evidently relies on the italicized portion of each provision. But, being mere transpositions of the comparable clauses in the Federal Constitution, they must be presumed to have the same import, and the arguments invoking the State Constitutional guarantees are no better than those already disposed of under the United States Constitution. Moreover, the second clause of each of the two cited provisions makes it abundantly clear that the drafters of the Louisiana Constitution recognized the elementary principle that a taking for a public purpose accomplished by just compensation neither denies the property owner `due process of law' nor works an `impairment of his contract.'
"(2) The `procedural due process' arguments already discussed under the Federal Constitution (A(2) and A(3) supra) presumably also invoke the Due Process Clause of the Louisiana Constitution (quoted supra) but these contentions, like the one just discussed, have no grated merit under the local provision * * *".
The cases cited by appellant are not apposite, for example, the case of Kennon v. Hilburn, 144 La. 131, 80 So. 224, wherein the Town of Kentwood granted the plaintiff a franchise for erection of an electric light plant for supplying electric service to the residents of the municipality for a period of thirty years and on October 11, 1909 plaintiff and the municipality entered into a contract providing for the installation by the former of a street lighting system whereby he was to light the streets of the municipality for a period of five years, which contract was carried out to its expiration. At the expiration of the contract the plaintiff and the municipality could not agree on the contract for future lighting of the streets and the latter notified the plaintiff to remove the arc lights which he had installed, whereupon he brought suit alleging that by virtue of the franchise which he had acquired from the Town of Kentwood, on July 5, 1905 granting the privilege to furnish electric lights to the citizens of the town for public and private use, he installed the fourteen arc lights and two incandescent lights at as many street crossings in the town, and that a compliance with the notice given him would cause him irreparable injury and unlawful deprivation of his property rights. He prayed for and obtained an injunction restraining the town and its agents and employees from removing or attempting to remove from their present locations the arc lights and incandescent lights which he had installed and maintained more than five years, without objection or complaint on the part of the town.
On Appeal the court held that the thirty year franchise of July 5, 1905, as soon as accepted by plaintiff, became, between the town and himself, a contract entitled to protection under the Constitutional Clause. This case is not apposite as it does not involve an expropriation of a lighting utility as in the case at bar, under the power of eminent domain granted under and by virtue of Act 111 of 1900, LSA-R.S. 19:101 et seq. Had the Town of Kentwood acted under the latter Act granting it the right of eminent domain and expropriated the electric light plant, it would have included the franchise, that is, property and rights to serve the inhabitants of the Town of Kentwood and would not have violated the State and Federal Constitutions.
The Long Island Water Supply Company v. City of Brooklyn case, 166 U.S. 685, 17 S.Ct. 718, 720, 41 L.Ed. 1165, which specifically involved the alleged abrogation of a contract in connection with condemnation proceedings and the courts just as specifically *40 held: "The true view is that the condemnation proceedings do not impair the contract, do not break its obligations, but appropriate it, as they do the tangible property of the company, to public uses."[3]
The case of Shavers v. Duval County, Fla., 73 So.2d 684, 689, which involved an appeal from a judgment in a condemnation proceedings, contains an excellent discussion which is applicable to the case at bar. The Court stated:
"It is urged that to deny to the mortgagee the right to be paid interest to the maturity date of the debt, notwithstanding it has been paid its principal in full, will impair its contract in violation of the Constitutions of the United States and the State of Florida. It is quite true that the Constitution guarantees the right to contract and further provides that the obligations of contracts shall not be impaired. This constitutional guarantee is only a part of the Constitution and it must be construed in connection with other provisions of the Constitution. When we construe the provision with reference to the obligation of contract the conclusion is inescapable that the guarantee goes no further than to prohibit the impairment of the obligation of the contract, unless the impairment is authorized by other provisions of the Constitution. Every person must recognize and know that the right or power of eminent domain is an attribute of sovereignty and in the exercise of that inherent right or power, the obligation of the contract may be impaired with the limitation that when so impaired by taking private property for public use, the sovereign shall pay `just compensation.'
"The protection against the impairment of the obligation of the contract is no greater than other guarantees contained in the Constitution and, particularly, in the Bill of Rights. Every person is guaranteed the right of enjoying and defending life and liberty and acquiring and protecting property. There are other great rights guaranteed to the people by the Constitution; such as, the right of freedom of speech and of the press, freedom against unreasonable searches and seizures, the free exercise and enjoyment of religious profession and worship, and others. These freedoms and rights are not absoluteeach of them is subject to lawful restraints and limitations. The right to own and enjoy property is no higher in the constitutional sense than the right of liberty. Absolute freedom or liberty of the individual without limitation and restraint by law would result in anarchy. Absolute freedom and liberty to own or acquire property would ignore the police power which restrains the use of property and the other right of eminent domain by which private property is acquired for public use. There is no such thing under our constitutional system of government as absolute *41 liberty or freedom, without limitation and restraint.

* * * * * *
"As this right to acquire and own property is not absolute, it is necessary to consider the restraints and limitations, if any, with reference thereto. As far as this discussion is concerned, the police power is not involved except by comparison. We are concerned only with the power of eminent domain which is an attribute of sovereignty. The right to own and acquire property by the individual is subject to the right or power of eminent domain. The right or power of eminent domain possessed by the sovereign is limited or restrained by that provision of the Constitution for the protection of the individuals against arbitrary power that such private property shall not be taken for a public purpose without just compensation."

It would seem that both quotes are full answer to the contention of the appellant as to the nature of the franchise and the illegality of its expropriation in these proceedings.
We next come to the contention of appellant that the approval of the Louisiana Public Service Commission is a necessary condition precedent to any transfer of property which is under its jurisdiction. This is offered as an alternative defense. This contention is based upon Act 254 of 1936, now appearing in LSA-R.S. 45:123 et seq., which provides in part as follows:
"In order to encourage a further development of coordinated statewide electrification based upon a planned economy, an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility without first obtaining a certificate of public convenience and necessity from the Louisiana Public Service Commission. The Commission shall grant such a certificate only in the event that the electric service already being rendered is inadequate or that the rates for such electric services are unreasonable,"
and that the term "electric public utility" as used in the above quoted state is defined in LSA-R.S. 45:121 as follows:
"The term `electric public utility' as used in this Chapter means any person furnishing electric service, within this state, the parish of Orleans excepted," (Emphasis added)
and in an opinion dated January 23, 1957, relative to LSA-R.S. 45:121 through 123, the Secretary of the Louisiana Public Service Commission stated:
"The Commission has always considered the term `any person' would include a municipal corporation as well as a private corporation and has acted on that presumption."
We do not believe that the law and opinions relied upon are applicable where the complete electrical facilities and the rights to serve the inhabitants in the annexed territory are expropriated by a municipality (City of Thibodaux) from the owner of the facilities and franchise (Louisiana Power & Light Company). There, will be only one owner and operator, viz., the City of Thibodaux.
In addition counsel for plaintiff in his brief and argument directs our attention to Article 6, Section 7 of the Constitution which provides, after defining the powers of the Commission, that:
"Nothing in this article shall affect the powers of supervision, regulation and control over any street railway, gas, electric light, heat, power, water works, or other local public utility, now vested in any town, city, or parish government unless and until at an election to be held pursuant to laws to be hereafter passed by the Legislature, a majority of the qualified electors of such *42 town, City, or parish, voting thereon, shall vote to surrender such powers. In the event of such surrender such powers shall immediately vest in the Louisiana Public Service Commission; provided, that where any town, city, or parish shall have surrendered as above provided, any of its powers of supervision, regulation and control respecting public utilities, it may in the same manner, by a like vote, re-invest itself with such powers."
It is then shown that the City of Thibodaux in its 1918 Charter had been invested with full regulatory power over all public utilities within its municipal boundaries, both publicly and privately owned, by Act 266 of 1918, Sec. 2.
Our attention is also directed to LSA-R.S. 45:1163, 45:1164 as follows:
"1163. The (Louisiana Public Service) commission shall exercise all necessary power and authority over any street railway, gas, electric light, heat, power, waterworks, or other local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities."
"1164. The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by such public utilities.
"The provisions of this Section and R.S. 45:1163 shall not apply to any public utility, the title to which is in the state or any of its political subdivisions or municipalities."
Appellant further contends that the proposed expropriation is in violation of an outstanding order of the Louisiana Public Service Commission, dated June 16, 1953, which prohibits any utility from transferring any of its property without first obtaining its consent.
This order could not possibly pertain to change in ownership brought about by the exercise of the right of eminent domain.
Appellant next contends that the expropriation of a portion of an electric plant or system is not contemplated by Act 111 of 1900, and bases this argument upon the following language contained in the Act and we quote:
"Where the same person is the owner of both gas, electric light, and water works plants, or of more than one of any one kind of plant, the municipal corporation may not expropriate any one of the plants without expropriating all of the plants owned by the same person."
Based upon the above quoted language, appellant contends that the City of Thibodaux must expropriate, if at all, its entire property throughout the entire state of Louisiana.
We agree with the opinion of the lower court on this point that the Section intends to prevent a municipality from expropriating only a part of the company's system within its corporate limits.
Appellant next contends that there has been no finding of necessity for this appropriation. On this point the petition for expropriation alleged that it was "* * necessary for the public interest * * * and necessary in the public interest." The requirement under Act 111 of 1900 is that the expropriation be "* * * thought necessary to the public interest by the mayor and council of the municipality." While the petition satisfies the requirements of the Act, we are not, in fact, concerned therewith as the only question before this court is the right of the city to expropriate under Act 111 of 1900, now LSA-R.S. 19:101 et seq. within the city limits.
For the reasons assigned, judgment of the District Court is affirmed.
Affirmed.
NOTES
[1] It is apparent from the record, admitted by the City and appellant, that the City is not seeking to expropriate all of the company's facilities within the corporate limits, however, in its brief it does state that it is seeking to condemn all of the company's facilities within the corporate limits, "except only certain properties not wholly devoted to servicing the limited area involved * * *" but the appellant is not attacking the expropriation proceeding on this ground but contends that if the City has the power of expropriation at all it must expropriate all of the appellant's property in the entire state of Louisiana.
[2] 16 C.J.S. Constitutional Law § 282.

"Exercise of Power of Eminent Domain
"Property may generally be taken under the power of eminent domain without violating constitutional provisions against impairing the obligation of contracts.
"The power of eminent domain, like the police power, is a sovereign power of the states, not limited by the federal Constitution otherwise than by the requirement of due process of law. It authorizes the taking for public use of all property, whether tangible or intangible. Thus, the state may, on making due compensation, appropriate for public use the contract itself or property, the taking of which will interfere with, or prevent further performance of, the contract, and statutes and ordinances directing this to be done do not contravene the contract clause of the constitution. The legislature or a municipality cannot, by contract, deprive itself of the right to exercise the power of eminent domain, nor can it deprive any subsequent legislature of the power."
[3] Also in Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 1074:

"Mr. Justice Brennan, with whom The Chief Justice and Mr. Justice Douglas join, dissenting:
"* * * The Power and Light Company's only contention * * * is that the expropriation of its property would violate the Due Process and Impairment of the Obligation of Contract Clauses, Const. Amend. 14; Art. 1 § 10, even though just compensation is paid for it, because the property sought to be taken is operated by the company under a franchise granted by the Parish and confirmed by the City. This claim is utterly without substance. Long Island Water-Supply Co. v. City of Brooklyn, 166 U.S. 685, 17 S.Ct. 718, 41 L.Ed. 1165; West River Bridge Co. v. Dix, 6 How. 507, 12 L.Ed. 535. Certainly the avoidance of such a constitutional issue cannot justify a federal court's failure to exercise its jurisdiction. To hold the contrary would mean that a party could defeat his adversary's right to a federal adjudication simply by alleging a frivolous constitutional issue * * *".