STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1065

LAFAYETTE CITY-PARISH
CONSOLIDATED GOVERNMENT
AND LAFAYETTE UTILITIES SYSTEM

VERSUS

ENTERGY GULF STATES, INC.
AND ENTERGY CORPORATION

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 994490-J
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED.

John A. Braymer
Kenneth P. Carter
446 North Boulevard, 2nd Floor
Post Office Box 2431
Baton Rouge, Louisiana 70821
(225) 381-5844
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Entergy Gulf States, Inc. and
    Entergy Corporation

G. William Jarman
Pamela R. Mascari
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place, 22nd Floor
Post Office Box 3513
Baton Rouge, Louisiana 70801
(225) 387-0999
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Lafayette City-Parish Consolidated Government,
    Lafayette Utilities System, and the City of Lafayette

**James J. Adams**
**Fournet & Adams, LTD.**
**Post Office Box 2964**
**Lafayette, Louisiana 70502**
**(337) 234-1491**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Lafayette City-Parish Consolidated Government,**
     **Lafayette Utilities System, and the City of Lafayette**

**GENOVESE, Judge.**

This is an appeal from a judgment permitting Lafayette City-Parish Consolidated Government and Lafayette Utilities System (hereinafter collectively referred to as "Lafayette") to expropriate electrical distribution facilities owned and operated by Entergy Gulf States, Inc. and Entergy Corporation (hereinafter collectively referred to as "Entergy") within the corporate limits of the City of Lafayette, Louisiana. Entergy appeals the taking, challenges the amount awarded for the taking, and seeks attorney fees and court costs. For the following reasons, we affirm.

## FACTS

On September 9, 1999, Lafayette filed a Petition for Expropriation against Entergy seeking to take all of Entergy's electrical distribution system lying within the corporate limits of the City of Lafayette. In its brief to this court, Lafayette points out that "the property subject to this expropriation is <u>distribution</u> <u>property</u> <u>only</u>. The property consists of electrical distribution facilities (e.g., poles, transformers, conductors, wires, servitudes, meters, streetlights, etc.) and related customers currently serviced and/or owned by Entergy within sixteen (16) separate parcels of immovable property."

Entergy answered Lafayette's petition, challenging the right of Lafayette to expropriate its facilities and arguing that there was no public necessity nor would the taking be in the public's best interest.

Trial in this matter was held on April 3, 4, 5, and 6, 2006. The trial court initially received evidence on the issue of whether Lafayette had the right to take or expropriate all of Entergy's electrical distribution system lying within the corporate

1

limits of the City of Lafayette. After receiving evidence during the taking phase, the trial court, in its oral reasons for judgment, stated:

> [R]uling on whether or not this is a public necessity for the expropriation purpose, I find that it is a public necessity and it is for a public purpose. And just numerating [sic] my reasons, I've used [La.R.S.] 19:102 and the Constitutional Article 1[,] Section 4 as well. What I find in the expropriation of the 16 parcels serviced by Entergy at this point that LUS is attempting to expropriate, it benefits the public by deriving -- the public derives the benefit because of monies received through LUS which supplements the budget of Lafayette Consolidated Government.
>
> Further, it seems as if they have a more customer service oriented type of business. The situation they're faced with at this point is for future expansion in that area with the franchise set up the way it is that Lafayette Consolidated Government or LUS would have to service any expansion in that area as it is, so it would be duplicate of [sic] services. Also, Lafayette showed they have a loop system which is showing to be more reliable by the number produced in court and have slightly lower rates. . . . I think it's in the best interest of the City of Lafayette to expropriate this utility service in these 16 parcels.

Immediately thereafter the compensation phase of the trial was held. At the end of the compensation phase, the trial court took the matter under advisement. On May 12, 2006, the trial court issued a Judgment of Expropriation whereby it decreed, in pertinent part:

> IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Lafayette and against Entergy, decreeing the following:
>
> . . . .
>
> c) The fair market value of the electrical distribution facilities described above is EIGHT HUNDRED FORTY[-]FOUR THOUSAND TWO HUNDRED TWENTY[-]TWO AND NO/100 ($844,222.00) DOLLARS.
>
> d) Based on a stipulation of the parties, severance damages total FORTY[-]EIGHT THOUSAND FIVE HUNDRED AND NO/100 ($48,500.00) DOLLARS.

2

e) Based on a stipulation of the parties, consequential damages total EIGHTY-SEVEN THOUSAND TWO HUNDRED AND NO/100 ($87,200.00) DOLLARS.

f) That at such time as Lafayette deposits into the Registry of the Court the sum of NINE HUNDRED SEVENTY[-]NINE THOUSAND NINE HUNDRED TWENTY-TWO AND NO/100 ($979,922.00) DOLLARS ("Deposit") for the use and benefit of Entergy, Lafayette shall be and it is hereby awarded, adjudicated, granted and assigned the electrical distribution facilities described herein.

II.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Entergy pay all court costs and expert fees incurred in this proceeding, as follows:

a) Court costs in the sum of $5,155.50 (costs accrued through April 25, 2006).

b) Expert fees in the amount of FOUR[]THOUSAND FOUR HUNDRED SIXTY-NINE AND 95/100 ($4,469.95) DOLLARS, representing the fees charged by Nancy Heller Hughes ($4,009.95) and Ralph Larkins ($460.00) for time spent in court in relation to this matter.

Entergy filed a Motion for New Trial on June 2, 2006. In its motion, Entergy requested a new trial on the issues of court costs and expert fees only. Entergy's motion asserted "The Judgment of Expropriation executed by this Court awarded court costs in the sum of $5,155.50 and expert fees in the total amount of $4,469.95 contrary to applicable expropriation law of [La.R.S.] 19:101 et seq." In addition, Entergy requested "a Rule to Show Cause why attorney[] fees should not be awarded to Entergy . . . as provided for in [La.R.S.] 19:109. . . ." On July 31, 2006, the trial court denied Entergy's Motion for New Trial and Rule to Show Cause. A judgment to this effect was signed by the trial court on August 4, 2006. Entergy devolutively appeals.

3

## ASSIGNMENTS OF ERROR

In its appeal, Entergy asserts five assignments of error:

1.    The trial court erred in finding that Lafayette satisfied its burden of showing that this expropriation serves a public purpose and is necessary for the public purpose.

2.    The trial court erred in finding that the fair market value of the property being taken, in addition to the customers and income stream generated by those customers, is $844,222.

3.    The trial court erred in not awarding Entergy attorney fees and costs due to the fact that the amount awarded at trial, $979,922, was more than double the amount offered by Lafayette prior to commencing the litigation, and $220,000 more than an offer made in 2004, 5 years after the litigation began.

4.    The trial court erred by precluding defendant's expert from testifying because he was not a "certified" utility property appraiser.

5.    The trial court erred in not awarding Entergy an amount of money necessary to compensate it for the taxes it would have to pay on the monies received for the expropriated property.

## STANDARD OF REVIEW

The standard of appellate review of factual findings in a civil action is the manifest error/clearly wrong standard, and factual findings should not be reversed absent manifest error or unless they are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, the reviewing court may not reverse. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. *Id*.

*Moncrief v. Succession of Armstrong*, 05-1584, p. 10 (La.App. 3 Cir. 9/27/06), 939

So.2d 714, 720.

4

# LAW AND DISCUSSION

Louisiana Constitution Article 1, § 4 (emphasis added) provides in pertinent part:

(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

(B)(1) Property shall not be taken or damaged by the state or its political subdivisions *except for public purposes* and with just compensation paid to the owner or into court for his benefit. . . .

(2) As used in Subparagraph (1) of this Paragraph . . . "public purpose" shall be limited to the following:

(a) A general public right to a definite use of the property.

(b) Continuous public ownership of property dedicated to one or more of the following objectives and uses:

. . . .

(v) Public utilities for the benefit of the public generally.

(3) Neither economic development, enhancement of tax revenue, or any incidental benefit to the public shall be considered in determining whether the taking or damaging of property is for a public purpose pursuant to Subparagraph (1) of this Paragraph . . . .

(4) Property shall not be taken or damaged by any private entity authorized by law to expropriate, *except for a public and necessary purpose* and with just compensation paid to the owner; in such proceedings, *whether the purpose is public and necessary shall be a judicial question.*

(5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner

because of the expropriation.

> (6) No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction.

Louisiana Revised Statutes 19:102 (emphasis added), which relates to expropriation by municipal corporations, provides:

> Where a price cannot be agreed upon with the owner, any municipal corporation of Louisiana may expropriate property whenever such a course is determined to be *necessary for the public interest* by the governing authority of the municipality; provided, however, in case of the acquisition of any electric light, gas or waterworks property or plant, or of any railroad property, such determination shall not be conclusive as to whether the purpose of the taking is necessary, which, if contested, is a judicial question to be decided independently by the trial judge. Where the same person is the owner of gas, electric light, and waterworks plants, or of more than one of any one kind of plant, the municipal corporation may not expropriate any one of the plants without expropriating all of the plants within its jurisdiction owned by the same person.

### *Right to Take*

Entergy argues that Lafayette failed to meet its burden of proving that its taking would serve a necessary public purpose. Entergy cites *City of Thibodaux v. Louisiana Power & Light Co.*, 126 So.2d 24 (La.App. 1 Cir. 1960) and *Louisiana Power & Light Co. v. City of Houma*, 229 So.2d 202 (La.App. 1 Cir. 1969), in support of its position that the trial court incorrectly relied upon Lafayette's assertion that it would offer lower rates as a factor which could be considered a public benefit. Lafayette contends that these cases do not support the position advocated by Entergy. We, likewise, find both cases inapposite.

In *Thibodaux*, the city was granted the right to expropriate defendant's electrical distribution system. The defendant raised as a defense the likelihood that the city would charge higher rates to its customers. The entirety of the first circuit's

6

opinion relative to this issue is as follows: "The possibility that the municipality might charge higher rates than the former owner and operator of the utilities is not restrictive of the municipality's power to expropriate." *Thibodaux*, 126 So.2d at 36.

In *Louisiana Power & Light*, a utility company sought to expropriate a distribution facility owned by a municipality. The municipality advanced the exception of no right of action which the trial court sustained and the first circuit affirmed. This case dealt with the expropriation powers granted in La.R.S. 19:2. We find Entergy's reliance on this case is also misplaced.

Lafayette presented testimony that it can provide more reliable service and cheaper rates for its citizens as well as provide additional funds for community services. Mr. Terry Huval, Director of Utilities for Lafayette Utilities System (LUS),[1] testified that LUS generates substantial income. According to Mr. Huval, the money that flows from the utility system to the city-parish government "provide[s] police protection, fire protection, public works, maintenance activities, community development, and all other costs to run the government." These services directly benefit the public. In fact, during the ten-year period from October 1996 through October 2005, Mr. Huval testified that LUS contributed $140,402,405.00 to the parish government's general fund, of which $109,306,262.00 was attributed to the sale of electricity.

Mr. Frank Ledoux, Engineering and Power Production Manager for LUS, testified extensively with regard to Lafayette's ability to provide more reliable service. Mr. Ledoux compared and explained the system advantage interruption

---

[1] Lafayette Utilities System (LUS) is the trade name for the department of utilities within the Lafayette City-Parish Consolidated Government. LUS provides electric, water, wastewater, and telecommunication services.

7

frequency index (SAIFI), which measures the frequency of outages, and the system average interruption duration index (SAIDI), which measures the duration of outages. According to Mr. Ledoux's comparison of the records of LUS and Entergy in the area, Lafayette experienced fewer and shorter outages than Entergy. According to these reports, Mr. Ledoux testified that after this expropriation, more reliable service will be provided through looped main line systems rather than the dead-end distribution systems currently employed by Entergy, resulting in fewer outages of shorter duration. Mr. Ledoux also explained how the expropriation will assist with planned growth and how a single provider of electrical services within the city limits minimizes duplication of electric facilities and improves response in cases of fire, outages, and repairs.

Entergy's Regional Manager, Mr. Greg Guilbeau, testified as to his duties which included the maintenance of the existing distribution lines. Mr. Guilbeau testified that many of its electrical distribution lines are in rural areas where animals, such as cows, contribute to the number of outages. Further, the duration of outages is affected by the inability to easily access the electrical distribution lines in rural areas. When questioned on cross-examination as to whether Entergy could accept any new customers in the areas at issue herein, Mr. Guilbeau admitted that Entergy could not. According to Mr. Guilbeau, Entergy cannot expand within the city limits because it does not have a franchise agreement with Lafayette which would allow Entergy to accept new customers. Further, Mr. Guilbeau admitted that more than half of Entergy's customers living within the areas at issue herein would have no backup system if a break occurred due to the absence of a looping system north of the Holiday substation.

Ms. Liz Duhon, Entergy's Customer Service Manager, also testified. According to Ms. Duhon, Entergy offers similar services to its customers in times of hardship and provides comparable access to customers when addressing service matters.

As set forth above, we find that the record amply supports the trial court's judgment that Lafayette satisfied its burden of proving that the expropriation serves a public purpose and that said purpose is necessary for the public interest. Our review indicates that the trial court was presented with two permissible views of the evidence. Our review further indicates that the trial court was presented with a rational basis of facts upon which it could have rendered its determination. Where a rational basis exists for the factfinder's determination, particularly considering the two permissible views, our standard of appellate review, the manifest error or clearly wrong standard, dictates affirmation of the factfinder's rational assessment of the evidence. *See Welsh v. Oakdale Cmty. Hosp.*, 03-1014 (La.App. 3 Cir. 2/18/04), 866 So.2d 1072, *writ denied*, 04-682 (La. 4/30/04), 872 So.2d 499. Therefore, we find no merit in Entergy's argument that the trial court erred in its determination that Lafayette proved its taking served a necessary public interest.

### *Fair Market Value*

Entergy asserts that $844,222.00 is not the fair market value of the electrical distribution facilities. Entergy argues that the trial court's use of the income approach instead of the market approach, which contemplates comparable sales, was erroneous.

Lafayette's expert witness, Ms. Nancy Hughes, was accepted by the trial court as an expert in utility appraisal and valuation. Ms. Hughes received her Masters of Business Administration from the University of Chicago and obtained the designation

of Accredited Senior Appraiser (ASA) from the American Society of Appraisers. Ms. Hughes is one of only thirty-two individuals in North America who hold the ASA designation and is eminently qualified.

According to Ms. Hughes, when she values utility property, she develops indicators of value using all three approaches of value, i.e., the cost approach, the income approach, and the market approach. She described the three approaches of value as follows:

> The cost approach is looking at it from an inventory engineering perspective, a cost approach. The income value looks at it from some sort of a net earnings, and market is looking at other sales. So with the cost approach, you're looking at what's the value of producing a substitute property.

With respect to the market approach, Ms. Hughes further explained:

> The market is the approach that most people are familiar with because everyone gets an appraisal of their house and real estate is done with a market approach. This is where you make comparison to actual market sales. It is critical that there's an active market. And then you have to have comparable sales transactions . . . . It needs to be similar size and type of property under similar circumstances.

However, Ms. Hughes opined that the market approach is a difficult approach to apply to utility property because an active market typically does not exist, and even when you have sales of utility properties, "there's usually an issue of lack of comparability." For these reasons, Ms. Hughes did not articulate a figure based upon the market approach.

Regarding the cost approach, Ms. Hughes personally inventoried the property. She spent one week examining every pole "with the exception of one pole that was at the back of one of the parcels, and there was a big dog." Ms. Hughes assigned a value of $565,200.00 using the cost approach; however, Lafayette and Entergy ultimately stipulated to a value of $693.235.00 for the utility property at issue using

the cost approach.

With respect to the income approach, she explained that Entergy is a regulated entity that is allowed a certain rate of return on its investment and that said rate of return essentially equals the weighted average cost of capital. In order to determine an income approach, Ms. Hughes took the average net operating income associated with the sixteen parcels at issue herein and capitalized that at 9.46 percent for the remaining twenty-eight years on Entergy's franchise. From that formula, she arrived at a figure of $844,222.00 as the value for the utility property in this case using the income approach. Ms. Hughes considered the case of *City of Thibodaux v.Louisiana Power & Light Co.*, 373 F.2d 870 (5 Cir.), *cert. denied*, 389 U.S. 975, 88 S.Ct. 476 (1967), wherein the United States Fifth Circuit held that "capitalization of present income was a proper approach to the question of market value. . . ." *Id*. at 872.

Based on Ms. Hughes's testimony, the trial court accepted the income approach and the $844,222.00 figure presented by Ms. Hughes as the fair market value of the property at issue herein. Entergy now complains about Ms. Hughes's failure to provide a value for the market approach. Entergy contends: "The trial court had ample evidence of at least 3 prior sales of utility customers . . . on which to rely in valuing the property." We disagree.

Our review of the testimony clearly indicates that Ms. Hughes, the only expert appraiser to testify, considered all three approaches to valuation and arrived at two different appraisal estimates. The trial court accepted the testimony of Ms. Hughes, and Entergy presented no acceptable expert to refute her findings. It is distinctly within the province of the trial court to assess the credibility of expert witnesses and the weight to assign to their testimony. *City of Lafayette v. Dore*, 460 So.2d 755

11

(La.App. 3 Cir. 1984). We find no abuse of the trial court's discretion in its reliance upon Ms. Hughes's testimony, nor in its failure to arrive at a fair market value using the market approach when no authority for doing so was offered at the trial.

***Attorney fees***

Louisiana Revised Statutes 19:109(A) (emphasis added) provides, in relevant part:

> Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, *the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees*.

In its third assignment of error, Entergy argues that the trial court erred in not awarding it attorney fees and costs "due to the fact that the amount awarded at trial, $979,922, was more than double the amount offered by Lafayette prior to commencing the litigation, and $220,000 more than an offer made in 2004, 5 years after the litigation began." In its brief, Entergy claims that Lafayette made two offers: the first on August 3, 1999 involving only twelve of the sixteen parcels and for the amount of $435,894.00; the second on July 1, 2004 involving all sixteen parcels and for the amount of $759,779.00. Further, Entergy cites La.R.S. 19:113[2] and La.R.S. 19:12[3] to argue that Lafayette is responsible "for costs where the tender is made by the expropriating authority to the land owner prior to suit."

Lafayette contends that on January 20, 2005, it offered $1.2 million to Entergy

---

[2]Louisiana Revised Statutes 19:113 provides "If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner."

[3]Louisiana Revised Statutes 19:12 provides "If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner."

pursuant to a Formal Offer of Settlement. Lafayette argues that the trial court correctly denied Entergy's Motion for New Trial and its request for attorney fees based on the fact that its January 2005 Offer of Judgment was the highest amount it offered to Entergy, that said amount exceeded the amount awarded to Entergy by the trial court, and that said offer was made prior to trial. We agree.

Entergy, in its brief to this court, concedes that such an offer was, in fact, made. Entergy seemingly confuses the issue of when an offer must be made. Further, Entergy's reliance upon La.R.S. 19:113 and La.R.S. 19:12 is misplaced. These statutes pertain to offers made "before proceeding to a forced expropriation." Such is clearly not the case herein. The pertinent statute, La.R.S. 19:109, clearly dictates that the highest amount offered "prior to trial on the merits" is relevant, not the highest amount offered prior to suit being filed. In this case, Lafayette clearly made an offer prior to trial which exceeded the amount awarded by the trial court. Therefore, we reject Entergy's third assignment of error.

### *Exclusion of Entergy's Expert*

Next, Entergy challenges the trial court's exclusion of its expert, Mr. George Fitzpatrick. Entergy tendered Mr. Fitzpartick as an expert in electric utility economic valuation; however, the trial court excluded Mr. Fitzpatick's testimony pursuant to Lafayette's Motion in Limine.

Lafayette correctly argues that the trial court's exclusion of Mr. Fitzpatrick as a witness was clearly within the discretion of the trial court since (1) the trial court was required to determine the fair market value of Entergy's electrical distribution system, (2) Mr. Fitzpatrick was not a certified appraiser, and (3) Mr. Fitzpatrick admitted that he was not trying to seek fair market value of the property. Therefore,

13

we find that the trial court did not err or abuse its discretion in excluding Mr. Fitzpatrick as a witness pursuant to the provisions of La.Code Evid. art. 702 since his testimony would have been neither relevant nor reliable.

Louisiana Code of Evidence Article 702 provides, in relevant part, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." An expert's testimony must not only be reliable, it must also be relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993); *State v. Foret*, 628 So.2d 1116 (La.1993).

Applying the principles in *Daubert* and *Foret*, and the law in La.Code Evid. art. 702, we find no error in the trial court's exclusion of the testimony of Mr. Fitzpatrick.

***Award for Taxes***

In its final assignment of error, Entergy complains that the trial court's award did not contemplate the tax consequences it would incur because of the expropriation. Entergy offered the testimony of Mr. Rory Roberts, its Director of Income Tax Accounting and Compliance. Mr. Roberts testified that Lafayette's expropriation, and subsequent payment to Entergy, would create a taxable event requiring Entergy to pay federal and state income taxes. According to Mr. Roberts, Entergy's tax liability at the time of trial was 38.48 percent. Therefore, based on the $979,922.00 awarded to Entergy by the trial court for the expropriated property, Entergy will have a tax consequence of $377,073.98. In its brief, Entergy states: "The court's failure to award this amount, in addition to the other amounts awarded was error and should be remedied by this court."

Lafayette argues that Entergy's position is tantamount to imposing a penalty on Lafayette for exercising its statutory right to expropriate for the public good. Lafayette's expert witness, Mr. Ralph Smith, a certified public accountant, was accepted by the trial court as an expert in the field of public utilities accounting. According to Mr. Smith, what would be considered a gain, or as Mr. Roberts stated, a taxable event, in year one, would be returned to the rate payers in year two and considered an expense. Therefore, Lafayette asserts that "it was reasonable for the court to conclude that, even if taxes are due as a result of this expropriation, Entergy would not incur a tax cost."

With neither legislation nor jurisprudence allowing for Entergy's recovery of income taxes in a case such as this, we forego granting such an award. Consequently, we reject Entergy's fifth and final assignment of error. In all respects, we find no manifest error in the trial court's judgment.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment in all respects. Defendants-Appellants, Entergy Gulf States, Inc. and Entergy Corporation, are assessed with all costs of this appeal.

**AFFIRMED.**